No. 36,016

L. E. WADDELL, *Appellee*, v. HAROLD H. WOODS, M. D., *Appellant*.

(148 P. 2d 1016)

Opinion filed May 6, 1944.

*Robert Stone,* of Topeka, argued the cause, and *James A. McClure, Robert L. Webb, Beryl R. Johnson* and *Ralph W. Oman,* all of Topeka, were on the briefs for the appellant.

*Edward Rooney,* of Topeka, argued the cause, and *H. C. O'Reilly,* of Cottonwood Falls, *Jacob A. Dickinson* and *Edward Rooney, Jr.,* both of Topeka, were on the briefs for the appellee.

The opinion of the court was delivered by

THIELE, J.: This was an action to recover damages for injuries alleged to have been sustained by plaintiff growing out of X-ray treatments administered by defendant.

Defendant's demurrer to the plaintiff's petition, on the ground it did not state facts sufficient to constitute a cause of action, was overruled and defendant appeals. It is clear from the briefs submitted that in the trial court the plaintiff contended, as he does here, that he had stated facts sufficient to warrant application of the doctrine of *res ipsa loquitur,* and that defendant contended that the facts stated were not sufficient to constitute a cause of action and that in any event the doctrine had no application in this type of case.

As shown by the journal entry, the trial court, in ruling on the demurrer, held that the doctrine of *res ipsa loquitur* did not apply

to the treatment of cases such as were outlined in the petition, but that an allegation, hereafter quoted in full, that defendant had delegated work to a person unknown to plaintiff, was a sufficient allegation of negligence, and it overruled the demurrer.

From that ruling the defendant appealed. The plaintiff perfected no cross-appeal, but in his brief seeks to have reviewed the correctness of the trial court's ruling with respect to application of the doctrine of *res ipsa loquitur* to all parts of his petition.

Upon oral argument in this court, the court raised the question whether, in the absence of a cross-appeal as provided in G. S. 1943 Supp. 60-3314, the plaintiff might complain of the trial court's ruling insofar as it was against him, and appellant has filed a reply brief in which that question is treated. Before discussing this phase further we note the allegations of the petition which for all purposes necessary here are as follows:

Defendant was a duly qualified and regular practicing physician and surgeon who held himself out as an expert in treatment of human ailments by X-ray and radium therapy, and that his skill in such field was superior to the ordinary skill of the regular practitioner of the medical profession; that plaintiff relying upon such skill, submitted himself to defendant for X-ray treatments on his leg and received six treatments on alternate days; that as the direct, immediate and *ap*proximate result of some one or more of such treatments he received a severe burn on his leg from the treatment and the X-ray machine, of such severity that it permanently crippled and disabled him and compelled him to enter a hospital for extended treatment, a detailed statement of which is not here important. After alleging the amount of damages sustained, the petition continued, viz.:

"Plaintiff further says that in the giving of said X-ray treatment in a proper and careful manner, no injury would result therefrom and no injury results therefrom except when proper skill and care is not exercised.

"Plaintiff further says that the giving of X-ray treatments under the circumstances alleged herein is such a highly skilled and specialized art and science that he has no knowledge of what is the proper technique and method and manner of giving and applying said treatment, and for that reason is unable to set out in detail or in substance the negligence of the defendant which were the approximate results of said injury, with this exception: That among the acts of negligence was the delegation of said work to a person unknown to this plaintiff and who was not a physician and surgeon and otherwise not qualified, as plaintiff is informed and verily believes and, therefore, states the fact to be without additional and further knowledge which is not available to him."

The prayer was for judgment for the amount of the damages alleged.

Taking up first the extent of our review, and whether the plaintiff is limited by reason of his failure to file a cross-appeal, we think it may be assumed that his petition was so drawn as to attempt to state a situation where the doctrine of *res ipsa loquitur* would be applied. Without repeating earlier allegations, it will be noted that although the pleader denominated it as an act of negligence, the simple statement of the allegation segregated by the trial court is that the defendant delegated work "to a person unknown to this plaintiff and who was not a physician and surgeon and otherwise not qualified." There is no allegation that such person did anything whatever. Even liberally construed to mean that such person did the delegated work, there is no allegation that the delegated work was done negligently or contributed to the injury. The mere fact the pleader said the act was one of negligence did not make it so. As we read the petition the delegation of work was only one of all facts pleaded to be considered in determining whether or not a situation was presented where the doctrine contended for should be applied. We are therefore of opinion the appeal presents the question whether the petition states facts sufficient to warrant application of the doctrine.

This court in former decisions has discussed and defined the doctrine as applied to certain types of negligence cases, and has held that the doctrine of *res ipsa loquitur*, which means "the thing speaks for itself" is a rule of evidence and not of substantive law, and that the mere fact an accident happens or an event occurs in which injury results is not sufficient to establish liability; that negligence is never presumed but must be established by proof; that where direct proof is lacking the circumstances may be proved and if they are such as to leave no conclusion to be drawn other than that defendant be at fault, they may be shown to make a prima facie case and to warrant application of the doctrine of *res ipsa loquitur*. The same opinions disclose that if the plaintiff proves specific negligence the doctrine does not apply, nor where it does apply, is the defendant precluded from showing an intervening cause, the act of a third person causing the injury, *vis major* or other proper defense to relieve himself of liability. (See, e. g., *Mayes v. Kansas City Power & Light Co.*, 121 Kan. 648, 249 Pac. 599; *Stroud v. Sinclair Refining Co.*, 144 Kan. 74, 58 P. 2d 77; and

*Starks Food Markets, Inc., v. El Dorado Refining Co.*, 156 Kan. 577, 134 P. 2d 1102, and cases and authorities cited.) The above cases and the authorities generally hold that it is essential to the application of the doctrine that it must appear the instrumentality which caused the injury complained of was at the time of the injury under the sole and exclusive control of the defendant.

As has been stated, the rule is one of evidence and not of substantive law, but it has been held that the elements pertaining to application of the doctrine may be applied in determining the sufficiency of a petition. See *Starks Food Markets, Inc., v. El Dorado Refining Co.*, supra, where this court held that a petition which did not allege defendant's sole and exclusive control of the instrument alleged to have produced the accident, did not state a cause of action.

Although in our previous decisions little or nothing has been said with reference thereto, it has been frequently held that it is important in considering the doctrine and its application and effect in given cases, to distinguish the doctrine from the principle that negligence may be established by circumstantial evidence, and that there is some confusion because the distinction is not observed. Although not all-inclusive, it has been held that in a situation to which the doctrine as a distinctive rule applies, there is no evidence, circumstantial or otherwise, of probative value, to show negligence, apart from the assumed proposition, resting on common experience and not on the specific circumstances of the particular case, that the physical causes, which produced the accident or injury complained of, do not ordinarily exist in the absence of negligence or in the absence of a breach of duty such as the defendant owed to plaintiff. The fact the doctrine is not applied does not mean that negligence may not be proved by circumstantial evidence, as well as by direct evidence. For a fuller discussion see 38 Am. Jur. 992 (Negligence, § 297). Compare, also, *Root v. Packing Co.*, 88 Kan. 413, 129 Pac. 147.

With reference to the doctrine generally, it has been said that it is not a rigid or arbitrary doctrine to be mechanically applied, but a rule to be cautiously applied, dependent on the circumstances of the case. See 45 C. J. 1200 (Negligence, § 771) ; 38 Am. Jur. 998 (Negligence, § 301) ; as well as *Mayes v. Kansas City Power & Light Co.*, supra.

As applied to medical cases generally, and as applied to X-ray

cases specifically, there is great confusion in the decisions, as is disclosed by annotations in 13 A. L. R. 1414; 26 A. L. R. 732; 57 A. L. R. 268; and 60 A. L. R. 259. In the cases cited in those annotations, it will be found that in some instances the courts have held the doctrine applicable to actions where recovery for injury from X-ray treatment was sought, and other courts have held it was not. In the annotation in 57 A. L. R. 268, 269, published in 1928, it is stated that in a majority it was held the doctrine did not apply from the mere fact of unsatisfactory results of an X-xay treatment. Without intending to say the list is complete, in the following later cases not cited in the above annotations the doctrine has been specifically applied in X-ray cases: *Moore v. Steen,* 102 Cal. App. 723, 283 Pac. 833 (1929); *Casenburg v. Lewis,* 163 Tenn. 163, 40 S. W. 2d 1038 (1931); and *Adamsen v. Magnelia,* 280 Ill. App. 418, 432 (1935) (where it was said the cases dealing with application "are in an unhappy discord"); and it has not been applied in the following: *Kelly v. Yount,* 338 Pa. 190, 12 A. 2d 579 (1940). Limits of time and space preclude reference to or analysis of many other cases where recovery for injuries resulting from X-ray burns was sought, where a discussion may be found as to the effect of evidence, circumstantial and otherwise. We do note, however, in most of the cases, there is an extended statement of the evidence, and that in none of the cases heretofore referred to did the question arise on sufficiency of plaintiff's petition.

In support of his contention the doctrine of *res ipsa loquitur* is here applicable, appellee cites our decision in *George v. Shannon,* 92 Kan. 801, 142 Pac. 967. He isolates an instruction which we approved and relies entirely on it. It is true that so taken, the substance of the doctrine may be deduced. However, in that case, specific acts of negligence were alleged, which ordinarily prevents application of the doctrine. For aught the opinion discloses, there was evidence to support those allegations. The approved instruction advised the jury that if the X-ray machine was properly used (for diagnosis, not treatment) and when properly used burning was not a necessary result, then the fact there was a burn was a circumstance that could be taken into consideration. Under the facts of that case, it appears the instruction was more properly one on consideration of circumstantial evidence than one stating a case for application of the doctrine of *res ipsa loquitur.* We do not think that decision decisive of the present appeal.

In discussing the question of inferences and presumptions to be indulged in actions against physicians and surgeons, it is said in 41 Am. Jur. 236 (Physicians and Surgeons, § 127) that a physician or surgeon is presumed to exercise his legal duty of ordinary skill and care, and that he carefully and skillfully treated or operated on his patient, and that no presumption of negligence is to be indulged from the fact of injury or bad result and further that:

"The mere fact of injury or adverse result from treatment or an operation does make the doctrine of *res ipsa loquitur* applicable. It has no application to the death of a patient under an anesthetic. Although some courts have taken the view, in effect at least, that the doctrine *res ipsa loquitur* applies to injuries resulting from the use of X-rays on the patient, this view is rejected by the majority, which holds that the fact of injury raises no inference of negligence, and the majority rule has been followed by the courts in a jurisdiction which does not recognize the doctrine of *res ipsa loquitur.*" (41 Am. Jur. 237.)

In support of the first sentence of the above quotation, the case of *Schmidt v. Stone,* 50 N. D. 91, 194 N. W. 917, is cited. Reference to that opinion will show the court held the doctrine not applicable. Evidently the word "not" was erroneously omitted in the quoted statement.

This court has recognized the general rule that a physician or surgeon is presumed to have carefully and skillfully treated or operated on his patient, and that there is no presumption of negligence to be indulged from the fact of injury or adverse result. See *Pettigrew v. Lewis,* 46 Kan. 78, 26 Pac. 458; *Paulich v. Nipple,* 104 Kan. 801, 180 Pac. 771; *James v. Grigsby,* 114 Kan. 627, 220 Pac. 267; *Riggs v. Gouldner,* 150 Kan. 727, 96 P. 2d 694, and cases cited. See, also, the classic case of *Ewing v. Goode,* 78 Fed. 442.

Bearing in mind the principles generally set forth above, we proceed to an examination of the petition to see whether it states facts sufficient to constitute a cause of action or whether it states facts to warrant application of the doctrine of *res ipsa loquitur*. In a preliminary way it may be noted there is no allegation defendant was in exclusive control of the X-ray machine or of the treatment administered. Possibly that may be inferred, or perhaps we should take judicial notice of things scientific or otherwise which are generally known. (See *Valley Spring Hog Ranch Co. v. Plagmann,* 282 Mo. 1, 220 S. W. 1, 15 A. L. R. 266.) If we do so, we should also take notice that patients receiving such treatments, especially on the extremities of the body, are not under anesthetic but are

awake and capable of observing the general physical make-up of the machine, and what is objectively done in the treatment even though they know nothing about the effect intended or actually accomplished, and are in position to allege the ultimate facts concerning the same. There is no allegation whether defendant made the diagnosis leading up to the treatment, whether that diagnosis was made by some other physician or surgeon, or just what the situation was, nor is there any allegation of the purpose for which the treatments were administered. There can be no argument but that whether the treatment was properly administered is usually a question of fact to be determined on expert testimony, and we need not speculate on whether plaintiff submitted to a treatment without knowing its purpose. We are not warranted in taking any judicial notice from the facts stated therein, but a mere reading of the many decisions dealing with injury from X-ray treatments discloses that the purpose in many cases was to destroy malignant growth, or arrest its growth, and so-called burning was to an extent the purpose to be served. In a case where the court is asked to apply a doctrine, the applicability of which depends on the entire circumstances, those circumstances should be divulged. It does not seem to us a sufficient answer to say that the plaintiff need not plead his evidence, for it is a fundamental rule of pleading that while he need not plead his evidence, he must plead the ultimate facts. Nor is it any answer to say that if the defendant wanted further information, he should file a motion to make more definite and certain. The defendant has no burden to induce the plaintiff to state a cause of action where none has been alleged. Where the plaintiff seeks to take advantage of the doctrine here involved, it is incumbent upon him to show fully a situation where it is applicable.

The substance of the allegations of the petition which would in any case warrant the application of the doctrine of *res ipsa loquitur* are included in the two paragraphs quoted above. The first quoted paragraph is somewhat negatively stated and is a conclusion rather than a statement of ultimate facts. The second paragraph seems intended to allege inability to state what is proper treatment or wherein it was not given. As has been stated above, we do not regard the latter part of the paragraph pertaining to allegations of work as adding anything vital to the other allegations. Appellant argues that in the sum and substance of these allegations plaintiff has pleaded no negligence, or in the alternative that he seeks only

to recover for a bad result. Appellee argues that he does not seek recovery for a bad result; that the treatment was not for the purpose of burning or injuring him; that the burns which he received were something beyond the scope of the treatment and not merely a bad result; and that having been inflicted as the result of negligence, he may recover therefor.

We are of opinion that in the absence of any allegation as to the purpose of the treatment or the physical situation when it was performed, a mere allegation that if the treatment had been properly administered no harm would have resulted, but harm did result from causes of which the patient was not aware, did not state facts sufficient to make the doctrine of *res ipsa loquitur* apply, even though it be held that it may be applicable in certain types of medical treatment cases. If it is not applied there was no sufficient allegation of negligence, and the demurrer to the petition should have been sustained. As the petition now is, we think it only alleged a claim for damages for a bad result.

Under the situation presented in this appeal we need not determine whether in every case we would hold that the doctrine of *res ipsa loquitur* had no application in medical treatment cases. We content ourselves here in saying the petition under consideration did not disclose a situation where it should be applied.

The ruling of the trial court is reversed and the cause remanded with instructions to sustain the demurrer.

WEDELL, J., dissents.

SMITH, J. (dissenting): I cannot concur in the opinion of the majority. Briefly my views are as follows: I prefer to consider this just as any tort action. When we do that we find the defendant in charge of an X-ray machine holding himself out to treat people with it. As we all know, this is when properly used a beneficial and curative agency, but when negligently or carelessly used deadly and destructive.

The plaintiff had a right to assume that this agency would be used carefully. The defendant certainly owed him that duty.

These things are alleged in the petition.

My idea is it alleged the duty of the defendant, a breach of the duty and resulting damages. It seems to me that this stated a cause of action. Such a rule does not have the effect of making the defendant liable for a failure of the treatment. It simply makes him

liable for so negligently using this powerful agency that damages resulted. Viewed as a realistic proposition, the rule must be as above if a patient is ever to recover for the negligent use of an X-ray machine. There are many conceivable steps in the application of X-ray treatments. The failure to take any one of them with due care would constitute negligence on the part of the operator of the machine. The machine might be too close to the body. There might be too much current or power applied for the particular case. The adjacent tissue might have been inadequately protected.

I think judicial notice should be taken of the fact that most people who subject themselves to treatment with such machines are not familiar with the manner in which such machines are operated. They would be unable to tell wherein the operator of the machine was negligent. All these matters are within the peculiar knowledge of the doctor or operator of the machine.

I am aware of the argument that doctors must be free to apply treatment, free of the fear of liability. This petition liberally construed, as we must construe it on a demurrer in the absence of a motion to make more definite and certain, states a case where the plaintiff was injured by the negligence of the defendant. If the science be in such a stage of development that the machine may be used with due care and still injure the patient, then I am doubtful if such machines should be used.

I think the case was correctly decided by the trial court.

Hoch, J. (dissenting): Being unable to concur in the majority opinion, my reasons for dissent will be briefly stated. In the opinion it is said: "as the petition now is, we think it only alleged a claim for damages for a bad result." I cannot so read the petition. The plaintiff alleged that the giving of X-ray treatments requires a high degree of technical skill; that the defendant held himself out as an expert in the giving of such treatments; that the plaintiff submitted himself for such treatments in reliance upon the defendant's professional skill and care in the giving of such treatments; that as a result of the treatments he received such severe burns that he was permanently crippled and disabled. But that was not all. Plaintiff alleged much more than that. He alleged with reference to X-ray treatments: "in the giving of said X-ray treatment in a proper and careful manner *no injury would result therefrom and no injury results therefrom except when proper skill and care is not exercised.*" (Italics supplied.) Plaintiff did not merely allege that injury

*ordinarily* does not result when the treatment is properly given—or make other similar conditional allegation. He tendered a plain issue of fact susceptible of being supported—if true—by expert testimony. He might or might not be able to produce expert witnesses who would testify—out of wide experience, fortified by accepted medical textbook authorities—that if the treatment is properly given, according to methods known to all who are trained and skilled in the matter, no such injury ever results. Whether any such broad, positive testimony could be produced is not our concern. Nor is it our present concern that if such testimony were produced the defendant might produce many more expert witnesses who would testify that no matter how skillfully and properly the treatment is given injury will sometimes result—that such is a chance which anyone submitting himself to such radical treatment must take. We are here considering nothing but the sufficiency of the pleader's allegations as against demurrer. In this connection, the majority opinion takes note of the fact that there was no motion to make the petition definite and certain and says that it was not incumbent upon the defendant to file such a motion, and that his failure to do so does not lessen the pleader's burden of stating a cause of action. To that I agree. But we have many times said that in the absence of such a motion a pleading general in terms is to be liberally construed in favor of the pleader.

Let me suppose just one situation, for illustration. A patient is seriously injured by an X-ray treatment. He consults an X-ray specialist who tells him that the sort of injury he suffered could not possibly have resulted if the treatment had been properly given. The injured person asks what was wrong about the treatment and the specialist says that he does not know but probably the instrument was held too close, or the treatment was applied too long, or the voltage—if that is the word—was too high. And the injured person says that he was in a dazed condition and has no knowledge about how close the instrument was held or how long the period of treatment was, and certainly knows nothing about the voltage. Being unable truthfully to allege the precise nature of the defendant's negligence he would therefore be unable, under this opinion as I interpret its effect, to state a cause of action.

I subscribe fully to the doctrine that doctors should not be compelled to defend against claims based merely on bad results. I would not weaken the protection which the profession should have

both in its own and in the public interest. But if there is a case of malpractice in the use of a highly technical and dangerous instrumentality of treatment I do not want to say that the victim cannot state a cause of action unless he can allege with technical exactness the nature of the defendant's negligence.

Needless to say these views involve no reflection upon any parties to the instant action. We are dealing with a general rule and I think the opinion goes too far.