No. 41,227

Kenneth T. Rhodes, *Appellant*, v. Charles DeHaan, M. D.; Ernest P. Carreau, M. D.; Ray T. Parmley, M. D.; Adrian Mee, M. D.; Wesley Hospital and Nurse Training School, a Corporation, *Appellees*.

(337 P. 2d 1043)

Opinion filed April 11, 1959.

*C. H. Morris*, of Wichita, argued the cause, and *Robert F. Bailey* and *Lester A. Holloway*, both of Wichita, were with him on the briefs for the appellant.

*William Tinker*, of Wichita, argued the cause, and *Getto McDonald, Arthur W. Skaer, Hugh P. Quinn, William Porter, John E. Lancelot*, and *Alvin D. Herrington*, all of Wichita, were with him on the briefs for Charles DeHaan, M. D., Ray T. Parmley, M. D., and Wesley Hospital and Nurse Training School, a Corporation, appellees.

*Wm. P. Thompson*, of Wichita, argued the cause, and *Richard Jones, A. W. Hershberger, H. E. Jones, Jerome E. Jones*, and *Robert J. Roth*, all of Wichita, were with him on the briefs for Ernest P. Carreau, M. D., Ray T. Parmley, M. D., and Adrian Mee, M. D., appellees.

The opinion of the court was delivered by

Parker, C. J.: This was an action to recover damages for malpractice. Separate demurrers by the respective defendants to plaintiff's amended petition were sustained. Plaintiff appeals from such rulings.

Plaintiff commenced the action by filing a petition. Defendants attacked that pleading by a motion requesting an order requiring plaintiff to elect whether his cause of action was based upon *res ipsa loquitur* or upon allegations of specific acts of negligence. This motion was overruled.

Thereafter defendants filed a joint motion to make the petition more definite and certain and to strike. After the parties had so stipulated this motion was generally sustained with leave to file an amended petition.

Plaintiff filed an amended petition in due course. Thereupon defendants filed separate demurrers to this pleading on the ground it did not state a cause of action. These demurrers were sustained and plaintiff was again given time in which to amend his pleading. Instead of doing so he perfected the instant appeal wherein he specifies that the trial court erred in sustaining the demurrers of the respective defendants.

The amended petition is lengthy and in such form it cannot be easily summarized. For that reason, and in order that there can be no doubt as to the issue presented for determination on appeal or confusion with respect to its decision, we attach a copy of such pleading, omitting the caption, allegations of no importance to the issue, averments as to damages claimed, and the prayer, to this opinion as an appendix, where the alleged facts upon which plaintiff bases his cause of action will be available for ready reference.

By way of preliminary approach to the all decisive issue involved appellant raises two questions which require attention.

First he insists his amended petition is subject to liberal construction. That, as we understand it, is the well-established rule of this jurisdiction under conditions and circumstances such as have been heretofore related. See *Hickert v. Wright*, 182 Kan. 100, 819 P. 2d 152, where it is said:

"Where a trial court has properly ruled motions to make a petition definite and certain and to strike, and the plaintiffs have complied therewith, the amended petition when challenged by the separate demurrers of several defendants as insufficient to state a cause of action will be liberally construed." (Syl. ¶ 2.)

For other recent decisions of like import see *Allen v. Brown*, 181 Kan. 301, Syl. ¶ 2, 306, 310 P. 2d 923; *Vitt v. McDowell Motors, Inc.*, 180 Kan. 800, Syl. ¶ 4, 308 P. 2d 115.

Next it is argued that the doctrine of *res ipsa loquitur* is applicable as against multiple defendants. We have so held. See *Worden v. Union Gas System*, 182 Kan. 686, 689, 324 P. 2d 501, which reads:

". . . It is well settled in this state that the doctrine of *res ipsa loquitur* is applicable as against multiple defendants. (*Nichols v. Nold*, 174 Kan. 613, 258 P. 2d 317, 38 A. L. R. 2d 887; *Waterbury v. Riss & Company*, supra; *Woods v. Kansas City, K. V. & W. Rld. Co.*, 134 Kan. 755, 8 P. 2d 404.) . . ." (p. 689.)

At the outset it may be stated that, despite some quibbling between the parties, we are not disposed to labor arguments advanced respecting the import to be given the amended petition,

hereinafter referred to as the petition, when surveyed as a whole. The right to relief therein sought is founded on the doctrine of *res ipsa loquitur*, an expression which means, literally, the transaction speaks for itself, and the facts and circumstances accompanying an injury may be such as to raise a presumption, or at least permit an inference, of negligence on the part of the defendant. (38 Am. Jur., Negligence 989 § 295; 65 C. J. S. Negligence, 987 § 220 [2].)

Nor is it necessary to here detail contentions made by the parties respecting their respective positions as to the propriety of the rulings on the demurrers. Stripped of all excess verbiage and extraneous matters they may be stated, in highly summarized fashion, thus:

Appellant contends that allegations respecting the injuries sustained by him, under the conditions and circumstances set forth in the petition, authorize an inference or raise a presumption that the parties therein charged were guilty of negligence, hence such petition states a cause of action under the doctrine of *res ipsa loquitur*.

Appellees insist the doctrine of *res ipsa loquitur* or the presumption of inference of negligence does not, except in a very few limited situations which do not embrace the allegations of the petition, apply to malpractice actions because negligence in such actions cannot be inferred from bad result, failure to recover, unusual happening, or other circumstance showing lack of success resulting from an operation; hence such doctrine had no application under the pleaded facts and the trial court's action in sustaining the demurrers to the petition on the ground it failed to state a cause of action was proper.

In order to properly determine the single appellate issue involved reference must be made to the established law of this jurisdiction relating to the force, effect and application of the doctrine of *res ipsa loquitur* and to the rights, duties and liabilities of physicians and surgeons.

We do not deem it necessary to here write a thesis on the general doctrine of *res ipsa loquitur* as recognized and applied in this state. For present purposes it may be said the entire subject is concisely but nevertheless comprehensively covered by the lengthy statement appearing at pages 160 to 162, incl., of the opinion in *Lamb v. Hartford Accident & Indemnity Co.*, 180 Kan. 157, 300 P. 2d 387, which statement is requoted *in toto* in a more recent de-

cision, *Rupe v. Smith*, 181 Kan. 606, 313 P. 2d 293, at pages 613 to 614, incl., of the opinion in that case. We adhere to what is there said and held with respect to the doctrine of *res ipsa loquitur* generally and make such statement a portion of this opinion, as fully and completely as if set forth at length herein.

The ordinary principles, governing the duties and liabilities of physicians and surgeons, are well stated in *Cummins v. Donley*, 173 Kan. 463, 249 P. 2d 695, involving an action for damages for malpractice, based on allegations of specific acts of negligence, where it is said:

"This court has recognized the general rule that a physician or surgeon is presumed to have exercised his legal duty of ordinary care and skill and, in the absence of an allegation in the petition to the contrary, it is presumed that he possesses that reasonable degree of learning and skill ordinarily possessed by members of his profession and of his school of medicine in the community where he practices, or similar communities, and that he carefully and skillfully operated on the patient. No presumption of negligence of a physician or surgeon is to be indulged from the fact of injury or adverse result of his treatment of, or operation on the patient. (*Waddell v. Woods*, 158 Kan. 469, 474, 148 P. 2d 1016; *James v. Grigsby*, 114 Kan. 627, 631, 632, 220 Pac. 267; 41 Am. Jur., 236, 237, Physicians and Surgeons § 127; 70 C. J. S. 989, Physicians and Surgeons, § 62.)

"In an action for damages occasioned by negligence or malpractice of a physician, every fact necessary to constitute a cause of action must be alleged in the petition with reasonable definiteness and certainty. Where the breach of duty relied upon is negligence in the treatment of the patient, it is not sufficient merely to state that certain acts not negligent in themselves were done or omitted. A petition which alleges a course of treatment entirely consistent with the physician's exercise of all necessary care and skill, but alleging nonsuccess of the treatment, is insufficient to charge negligence or malpractice. (70 C. J. S. 985, Physicians and Surgeons, § 61; 41 Am. Jur. 234, Physicians and Surgeons, § 124.) The burden of pleading is not shifted to defendant by merely alleging in a petition that an unsuccessful result has attended the treatment or operation of the patient by the physician." (pp. 465, 466.)

For a more recent statement of the same principles see *Goheen v. Graber*, 181 Kan. 107, 111, 112, 309 P. 2d 636.

The rule is no different in malpractice actions where—as here—it is conceded the pleader purposely stayed away from specific acts of negligence and based his right to recover under the doctrine of *res ipsa loquitur* and inference of negligence. This is fully established in *Waddell v. Woods*, 158 Kan. 469, 148 P. 2d 1016, where it is said:

"In discussing the question of inferences and presumptions to be indulged in actions against physicians and surgeons, it is said in 41 Am. Jur. 236 (Physicians and Surgeons, § 127), that a physician or surgeon is presumed to exercise his legal duty of ordinary skill and care, and that he carefully and skillfully treated or operated on his patient, and that no presumption of negligence is to be indulged from the fact of injury or bad result and further that:

" 'The mere fact of injury or adverse result from treatment or an operation does make the doctrine of *res ipsa loquitur* applicable. It has no application to the death of a patient under an anesthetic. Although some courts have taken the view, in effect at least, that the doctrine *res ipsa loquitur* applies to injuries resulting from the use of X-rays on the patient, this view is rejected by the majority, which holds that the fact of injury raises no inference of negligence, and the majority rule has been followed by the courts in a jurisdiction, which does not recognize the doctrine of *res ipsa loquitur*.' (41 Am. Jur. 237.)

"In support of the first sentence of the above quotation, the case of *Schmidt v. Stone*, 50 N. D. 91, 194 N. W. 917, is cited. Reference to that opinion will show the court held the doctrine not applicable. Evidently the word 'not' was erroneously omitted in the quoted statement.

"This court has recognized the general rule that a physician or surgeon is presumed to have carefully and skillfully treated or operated on his patient, and that there is no presumption of negligence to be indulged from the fact of injury or adverse result. See *Pettigrew v. Lewis*, 46 Kan. 78, 26 Pac. 458; *Paulich v. Nipple*, 104 Kan. 801, 180 Pac. 771; *James v. Grigsby*, 114 Kan. 627, 220 Pac. 267; *Riggs v. Gouldner*, 150 Kan. 727, 96 P. 2d 694, and cases cited. See, also, the classic case of *Ewing v. Goode*, 78 Fed. 442." (p. 474.)

For another rule of special interest, under the existing facts and circumstances, see *Lamb v. Hartford Accident & Indemnity Co.*, 180 Kan. 157, 300 P. 2d 387, which reads:

"The doctrine of *res ipsa loquitur*, which means 'the thing speaks for itself,' is a rule of evidence and is not of substantive law. Cases dealing with the doctrine as a rule of evidence are authority on the question of pleading, and for a petition to be sufficient as against a demurrer, it must contain allegations of fact, which, if proved, would authorize application of the doctrine. (*Mayes v. Kansas City Power & Light Co.*, supra; *Stroud v. Sinclair Refining Co.*, supra; *Starks Food Markets, Inc., v. El Dorado Refining Co.*, supra; *Sipe v. Helgerson*, supra; 65 C. J. S., Negligence, § 220 [3], p. 993.)

And on the same page of the Lamb case where it is said:

"The difficulty courts often encounter is the application of the doctrine to the situation disclosed by the facts and circumstances alleged in the petition or by the evidence adduced in the event of trial. It is settled in Kansas that the fact an injury occurs is not sufficient to establish liability; that negligence is never presumed but must be established by proof; that in cases where the doctrine is applicable and direct proof is lacking, proof is made, if at all, by circumstantial evidence; *that is, proof of injury and of the circumstances surrounding its occurrence are such as to leave no reasonable conclusion to be drawn other than that the injury occurred because of defendant's want of care.* (*Mayes v. Kansas City Power & Light Co.*, supra; *Starks Food Markets,*

*Inc., v. El Dorado Refining Co.,* supra; *Sipe v. Helgerson,* supra; *Waddell v. Woods,* supra; *Nichols v. Nold,* supra; *Waddell v. Brodbeck,* supra; 38 Am. Jur., Negligence, § 300, p. 996; 65 C. J. S., Negligence, § 220 [8], p. 1014.) . . ." (Emphasis supplied.) (p. 161.)

For a statement similar to the one just quoted see the first sentence of the last paragraph on page 471 of the opinion in *Waddell v. Woods,* supra.

See, also, *Waddell v. Woods,* supra, where, touching another phase of the subject, it is said:

"With reference to the doctrine generally, it has been said that it is not a rigid or arbitrary doctrine to be mechanically applied, but a rule to be cautiously applied, dependent on the circumstances of the case. See 45 C. J. 1200 (Negligence, § 771); 38 Am. Jur. 998 (Negligence, § 301); as well as *Mayes v. Kansas City Power & Light Co.,* supra." (p. 472.)

Nothing would be gained by extended reference to the petition, the allegations of which can be found upon resort to the appendix. It suffices to say that after making a careful examination of that pleading we are convinced that, when tested by the established rules of this jurisdiction, to which we have heretofore referred, the facts therein stated are not sufficient to warrant application of the doctrine of *res ipsa loquitur.* Therefore we are constrained to hold that, under the confronting facts and circumstances, the trial court's action in sustaining the demurrers to the petition was proper and must be upheld.

In reaching the conclusion just announced we have rejected, not overlooked, contentions advanced by appellant that our decisions in *Emrie v. Tice,* 174 Kan. 739, 258 P. 2d 332, and *Rule v. Chesseman, Executrix,* 181 Kan. 957, 317 P. 2d 472, are to be construed as precedents warranting a conclusion that the doctrine of *res ipsa loquitur* has application, under the facts, conditions and circumstances pleaded in the case at bar. From appellant's standpoint the most that can be said for the Tice case is that we did extend the doctrine, as recognized by our prior decisions, and held that it applied to X-ray treatments of human ailments under the facts and evidence there alleged and adduced. So far as the Rule case is concerned the plaintiff's cause of action was predicated on specific acts of negligence, the petition alleging, among other things, that the physician involved negligently and carelessly performed a gall stone operation on her, whereby a gauze pad or surgical sponge was left within her body. In any event both cases are clearly distinguishable and for that reason do not uphold appellant's position on the point now under consideration.

Divers other questions raised by appellant have been given careful consideration. We find nothing in them or in the arguments advanced in their support to change our view regarding the propriety of the rulings on the demurrers.

The judgment is affirmed.

## APPENDIX

### Amended Petition

Comes now the plaintiff, Kenneth T. Rhodes, and for his cause of action against the defendants and each of them alleges and states:

1. That he is a resident of Wichita, . . .

2. That Charles DeHaan, M. D., defendant herein named, is a resident of Wichita, . . .

That at all times material herein Charles DeHaan, M. D., and Ernest P. Carreau, M. D., were duly licensed and practicing physicians in Wichita, . . . and practiced their profession in the hospital maintained in Wichita by the co-defendant herein.

That Ray T. Parmely, M. D., and Adrian Mee, M. D., defendants herein named, are residents of Wichita, . . . and they are duly licensed and practicing physicians and anesthesiologists in Wichita, . . . and at all times material herein were engaged by the defendants Charles DeHaan, M. D., Ernest P. Carreau, M. D., and Wesley Hospital and Nurse Training School to administer the anesthetic and assist in the operation performed on the plaintiff as alleged herein and generally performed their services under the direction and control of the above named defendants. . . .

3. That Wesley Hospital and Nurse Training School, a corporation and co-defendant herein, maintains its hospital and office and principal place of business in Wichita, . . . and is engaged in operating for profit a private hospital wherein it holds out to the public that it is staffed and equipped to give patients, and especially this plaintiff, such reasonable care and attention as the respective patient's known condition requires. . . .

4. Kenneth T. Rhodes further states that on or about May 17, 1956, he became violently ill and after consulting with the defendant Charles DeHaan, M. D., about his condition, the said Charles DeHaan, M. D., made the necessary arrangements with Wesley Hospital and sent plaintiff to Wesley Hospital by ambulance and entered in said hospital as a patient on May 17, 1956.

That the defendant Charles DeHaan, M. D., not being a surgeon specially trained to perform an operation for a duodenal ulcer, upon his own responsibility and direction employed for and on behalf of this plaintiff the defendant Ernest P. Carreau, M. D., to perform the surgical operation.

That on May 19, 1956, plaintiff was taken to surgery by the defendants in the surgery hospital room of the defendant hospital. That at all times prior to being taken into said surgery operating room, as alleged, this plaintiff had no pain or disability of any nature whatsoever in the region of his arms and hands. That he worked regularly and had full use of his arms and hands.

That after being taken to the surgical operating room, this plaintiff was at all times under the exclusive care and control of the defendants and each of them . . .

That upon entering the operating room as above alleged, this plaintiff was prepared for surgery and was rendered unconscious by an anesthetic administered by Drs. Parmley and Mee, the exact nature of the anesthetic this plaintiff is unable to allege. That said anesthetic rendered this plaintiff immediately unconscious and insensible to pain and the defendants who were in the exclusive control of the unconscious body of this plaintiff performed upon this plaintiff's body surgery, the nature and extent of which this plaintiff is unable to allege because he was unconscious and insensible to pain as above alleged and that acts are in the exclusive knowledge and control of the defendants and each of them . . .

That the only authorization given by this plaintiff for the defendants to interfere with the unconscious body of this plaintiff was such acts as were necessary and incident to an abdominal operation for surgical treatment of a duodenal ulcer.

5. That when this plaintiff again regained consciousness after the unconsciousness as above alleged, he was in a hospital room of the defendant hospital being treated by the agents, servants and employees of the defendant hospital for post operative recovery. That immediately upon this plaintiff gaining consciousness, plaintiff suffered intense and disabling pain in the right arm, right shoulder, in the area of his back between his shoulders, in the area of the neck and base of the skull. That upon further observation and attempted use of his arms, plaintiff found he could not use his right arm and further observed that the right arm was badly swollen in the area adjacent to the elbow, both above and below the elbow and this area of the arm was black and blue in color.

That this plaintiff suffered from none of the above alleged pain, injuries and disabilities prior to being taken into the defendant's operating room and rendered unconscious and that said injuries upon the unconscious body of this plaintiff as alleged herein were inflicted upon the plaintiff by the defendants and their agents, servants and employees while this plaintiff was unconscious and in the exclusive control of these defendants and that at all times material herein the defendants and their agents, servants and employees were at all times material herein in the exclusive control of the operating room and operating table and equipment incident to the performing the operation for surgical treatment of a duodenal ulcer and were in exclusive charge of the operation and the post operative care of the plaintiff.

6. That on May 20, 1956, the morning following the operation, the intensity of the pain had somewhat subsided but the area on front side, back side and outside of the right shoulder was very sore and inflamed. The right elbow and upper and lower arm adjacent to the elbow was more swollen than the night before. That this condition was called to the attention of the defendant doctors, but, this plaintiff was not informed by the doctors as to the exact cause of the condition.

That plaintiff's right arm remained immobile. He could not raise it or bend it without assisting with the left hand. . . . Plaintiff was fed intravenously for some period of time after the surgery and the problem of plaintiff feeding himself never came up until the latter part of plaintiff's stay in the hospital, because after the intravenous feeding was discontinued plaintiff could not feed himself.

Further, because of the injury to the right arm as above alleged, the intravenous feeding had to be done exclusively through the left arm and all blood test samples, which were taken daily, had to be taken from the left arm because of the impaired blood circulation in the right arm. That as a direct result the veins of the left arm were so often punctured that they finally started breaking down and caused considerably difficulty in getting a needle into the vein so that the fluid would properly flow, all of which caused this plaintiff much pain and discomfort.

That during all the period of time material herein, this plaintiff continually tried to find out from Drs. Carreau and DeHaan and

Mr. Evans, superintendent of Wesley Hospital, what caused the injury alleged herein.

That in early July defendant Charles DeHaan, M. D., stated to this plaintiff that as far as the surgery was concerned, he could return to work, but that the condition of the arm prevented it and because of the condition of the arm plaintiff was not released to return to work by Dr. DeHaan until the 19th day of September, 1956. That although this plaintiff since the 19th day of September, 1956, has been able to work at his job with Boeing Airplane Company, he still suffers much pain and disability in the right arm and shoulder and the plaintiff believes that said condition is permanent.

This plaintiff further alleges that prior to admittance to Wesley Hospital on May 17, 1956, and the operation alleged herein on May 19, 1956, he was free from any abdominal hernia. That upon being released from the hospital, as alleged herein, this plaintiff discovered that he had a hernia in the region of the surgery incision. This plaintiff made inquiry of the defendants Charles De-Haan, M. D., Ernest P. Carreau, M. D., and Wesley Hospital and Nurse Training School as to when and under what circumstances the hernia developed, but said defendants refused to answer this plaintiff and would only reply to plaintiff's questions that he (referring to plaintiff) was lucky to be alive.

That plaintiff as a direct result of said injuries, will continue to suffer mental and emotional disturbances.

7. That the injuries and conditions refered to herein are severe, permanent, progressive and without remedy. That said injuries and resulting pain, suffering and disability as alleged herein is the direct and proximate result of negligence of the defendants and their agents, servants and employees as alleged herein. That because of the unconsciousness of the plaintiff and exclusive control of the defendants, as alleged herein, all of the acts of the defendants, as alleged herein are not now known to this plaintiff, but are known to the defendants and each of them. That the injuries alleged herein speak for themselves and that the acts, unknown to plaintiff, that caused said injuries while plaintiff's unconscious body was in control of defendants as alleged herein were acts contrary to and in violation of the standards of medical and hospital services properly rendered by physicians and hospitals in this community, and were contrary to the approved and standard practices

of medicine, surgery and hospital care as practiced and applied by doctors and hospitals in the community in which the acts alleged herein were performed.

8. That the defendants Charles DeHaan, M. D., Ernest P. Carreau, M. D., Ray T. Parmley, M. D., Adrian Mee, M. D., and Wesley Hospital Nurse Training School, a corporation, and each of them, in all the above conduct, acts, negligence, and malpractice alleged herein, acted individually and in concert, and jointly contributed to the injury of the plaintiff, Kenneth T. Rhodes, as alleged herein, and Kenneth T. Rhodes is entitled to recover damages as follows: