Garold Eugene HOVEN, et
al., Appellants,

v.

RICE MEMORIAL HOSPITAL, Gordon
J. Bos, et al., Respondents.

No. CO–85–2091.

Court of Appeals of Minnesota.

May 6, 1986.

Review Granted July 16, 1986.

Steven A. Nelson, Nelson, Larson &
Bowman, Ltd., International Falls, for Ga-
rold Eugene Hoven, et al.

Richard R. Quinlivan, Kevin Carpenter,
Quinlivan, Sherwood, Spellacy & Tarves-
tad, St. Cloud, for Rice Memorial Hosp.

Donald F. Hunter, R. Stephen Tillitt, Gis-
lason, Dosland, Hunter & Malecki, Minne-
tonka, for Gordon J. Bos, et al.

Heard, considered, and decided by POPO-VICH, C.J., and FORSBERG and LESLIE JJ.

## OPINION

LESLIE, Judge.

Appellant brought suit against surgeon, anesthesiologist, hospital and nurses for injuries allegedly sustained during surgery. This appeal follows a directed verdict for the defendants. We reverse.

## FACTS

On January 5, 1982, appellant Garold Hoven had a hernia operation performed by respondent Dr. Gordon J. Bos at respondent Rice Memorial Hospital. Respondent Dr. J.R. Krause was the anesthesiologist, Edward Miller was the nurse anesthetist, and Corlis Knapper was the nurse assisting Dr. Bos during the operation.

Prior to the operation, appellant had no problems with his arms, but after the operation his arms were numb. Appellant, his wife, and his son all testified that shortly after the operation appellant told Dr. Bos and a nurse that his hands were numb, and that Dr. Bos told him not to worry because the numbness would go away. Respondents deny being informed of the numbness until almost three weeks after appellant left the hospital.

Approximately three weeks after his release, appellant saw Dr. Bruce Wilson and complained about numbness in his arms. Dr. Wilson is a general surgeon who has performed numerous hernia operations. After examining appellant, Dr. Wilson concluded that he had a compression injury of his ulnar nerves which caused discomfort, tingling and pain. He testified that such an injury can occur if a patient's arms are improperly positioned while the patient is unconscious. Based on appellant's assertion that the discomfort began immediately after the surgery, Dr. Wilson testified that the injury occurred either in the operating room or in the recovery room before appellant recovered from the anesthesia. Dr. Wilson testified that this occurred while appellant was completely under the respondents' control and that the injury was not due to any of appellant's voluntary acts. The doctor also stated that such an injury should not ordinarily occur if proper procedures are used.

On cross-examination, Dr. Wilson admitted that he had no personal knowledge that appellant began feeling discomfort immediately after the operation and that nerve damage could be caused by other means. He further admitted that he had no knowledge of the procedures taken during the operation. He acknowledged that it is possible for a patient to receive nerve damage even if the surgical team used reasonable care but he felt that this would be highly unlikely.

About a month and one-half after appellant's release from the hospital, he visited Dr. Dwight Jaeger, an orthopedic surgeon. Based on appellant's assertions that discomfort began immediately after the surgery, Dr. Jaeger also felt that the nerves were damaged during surgery or shortly thereafter. Dr. Jaeger performed surgery on appellant to relieve his pain.

On cross-examination, Dr. Jaeger also admitted that nerve damage can occur in other ways. He further admitted that even if proper methods of protection are taken, a patient may develop some ulnar nerve compression. On redirect examination he stated that it is not the normal and usual expectation for these injuries to occur if proper procedures are employed.

Respondent Dr. Bos also testified. He stated that he did not remember every detail of the operation but his records showed that it went as usual. He also stated that neither his records nor the nurses' records showed that appellant had complained of discomfort after the surgery. Because these records normally note such complaints, Dr. Bos testified that appellant did not complain about nerve pain until three weeks after the surgery. Dr. Bos also testified that there are many ways in which a person may have nerve compression including a fracture, continual pressure by the person's body weight, and arthritic con-

ditions around the elbow. He further testified appellant had informed him that he previously had neuritis problems.

Respondents moved for summary judgment. The trial court denied this motion on the basis of Dr. Wilson's deposition, which was "sufficient to establish a prima facie case for the application of an inference of negligence." After appellant presented his evidence at trial, respondents moved for a directed verdict. This motion was also denied. After respondent's case, the motion for a directed verdict was renewed and this time it was granted.

## ISSUE

Did the trial court err in granting a directed verdict for respondents?

## ANALYSIS

Directed verdicts are appropriate only in exceptional cases. *Garner v. Todd*, 361 N.W.2d 459, 460 (Minn.Ct.App.1985). When analyzing an appeal from a directed verdict, this court must accept as true all of the evidence favorable to the adverse party and all reasonable inferences that may be drawn from the evidence. *Walton v. Jones*, 286 N.W.2d 710, 714 (Minn.1979). The standard for determining whether to direct a verdict is "essentially whether different persons could reasonably come to different conclusions after viewing the evidence as a whole in the light most favorable to the nonmoving party." *Lakehead Constructors, Inc. v. Roger Sheehy Co.*, 304 Minn. 175, 178, 229 N.W.2d 514, 515 (1975).

Appellant's case rested on testimony that this type of injury generally did not occur in the absence of negligence. From this evidence appellant argues the jury could have inferred the respondents were negligent in their actions. Appellant argues that he presented sufficient circumstantial evidence to warrant an inference of negligence under the theory of res ipsa loquitur.

■ Res ipsa loquitur is "merely another way of characterizing the minimal kind of circumstantial evidence which is legally sufficient to warrant an inference of negligence." *Hestbeck v. Hennepin County*, 297 Minn. 419, 424, 212 N.W.2d 361, 365 (1973) (footnote omitted). In order to submit a res ipsa loquitur claim to the jury, a plaintiff must establish that the injury-producing event is: (1) of a kind which ordinarily does not occur in the absence of someone's negligence; (2) caused by an agency or instrumentality within the exclusive control of the defendant; and (3) not due to any voluntary action or contribution on the part of the plaintiff. *Spannus v. Otolaryngology Clinic*, 308 Minn. 334, 337, 242 N.W.2d 594, 596 (1976). Because appellant alleges the injury occurred while he was unconscious, the third element has clearly been established.

■ The trial court apparently felt that in order to apply res ipsa loquitur, however, the plaintiff must rule out all other possible causes. Although the Minnesota Supreme Court made statements that tend to support this position in *Hoffman v. Naslund*, 274 Minn. 521, 530, 144 N.W.2d 580, 588 (1966), this clearly is not the law in Minnesota. In *Olson v. St. Joseph's Hospital*, 281 N.W.2d 704 (Minn.1979), the plaintiff suffered severe sores, lesions, or "burns" on his feet and lower leg after being hospitalized. The testimony conflicted as to whether the injuries occurred during his hospitalization or later. The trial court submitted the issue to the jury, instructing that if it found the injuries occurred while plaintiff was a patient at the hospital they could infer negligence if the elements of res ipsa loquitur were present. After a verdict for plaintiff, the trial court granted a new trial, reasoning that res ipsa loquitur did not apply because "the injury may have resulted from a cause that is not chargeable to the doctor or hospital." *Id.* at 707.

Although the supreme court noted that *Hoffman* supported the trial court's ruling, it reversed the trial court's decision. The court stated the correct rule concerning res ipsa loquitur when other possible causes are present as follows:

"When the injury might, *with equal probability,* have resulted from the acts of others as well as from the acts of defendant, proof of facts, other than that of injury, from which defendant's negligence can be inferred, must be made before the question can be submitted to the jury. Otherwise, the verdict would be founded on mere speculation. * * * An inference of negligence based on an inferred fact *of which there is neither evidence nor predominating probability* cannot be safely made."

*Id.* at 708 (*quoting Collings v. Northwestern Hospital,* 202 Minn. 139, 144, 277 N.W. 910, 912 (1938)).

The supreme court stated that the jury was instructed not to infer defendant's negligence unless it specifically found plaintiff was injured while in the hospital. The court stated:

"Thus, in this case, the inference of negligence was not based on an inferred fact, that plaintiff had been burned, of which there was no predominating probability. Rather, the jury first determined that the predominating probability was that plaintiff had suffered burns, and then proceeded to infer negligence under the res ipsa loquitur analysis."

*Olson,* 281 N.W.2d at 708.

■ In the present case, as in *Olson,* there is controversy concerning when appellant's injuries occurred. Appellant contends that the injuries arose during the operation and the respondents seemingly argue that they arose after he left the hospital. As in *Olson,* this problem would be eliminated if the court first instructed the jury to determine if the injuries did occur during the operation. Although the medical records suggest the injuries occurred later, this is not so clear as to support a directed verdict against appellant.

Assuming the jury were to find the injuries occurred while appellant was unconscious, the next question would be whether appellant presented enough evidence to allow the jury to decide if the injury-producing event ordinarily does not occur in the absence of someone's negligence. This depends almost entirely on the testimony of Dr. Wilson, who specifically testified that in most instances patients recovering from hernia surgery do not have ulnar nerve problems if proper procedures are followed. On cross examination, Dr. Wilson admitted that such an injury can occur during surgery if reasonable care is used, but that this would be "highly unlikely."

■ His testimony was sufficient to support a finding that this event normally did not occur unless someone was negligent, and that the issue should have been presented to the jury. The trial court did refuse to grant respondents' motion for summary judgment and respondents' earlier motion for directed verdict because of this testimony. Although Dr. Jaeger did not support Dr. Wilson's view, his opinion was not so conclusive to mandate a directed verdict. As the Restatement (Second) of Torts § 328D comment o (1965) states:

If the defendant produces evidence which is so conclusive as to leave no doubt that the event * * * was of a kind which commonly occurs without negligence on the part of anyone and could not be avoided by the exercise of all reasonable care, he may be entitled to a directed verdict.

■ The next element of res ipsa loquitur is that the injury-producing event must have been caused by an agency or instrumentality within the exclusive control of the defendant. Respondents argues that this element is not present because no one person had exclusive control of appellant during the entire time he was anesthetized, and at certain times some of the respondents had no control at all. Respondents argue that res ipsa loquitur is therefore improper and could impose liability on a person who clearly was not at fault.

Appellant argues that all of the respondents worked together as the surgical team and, as a group, had exclusive control over the injury-producing event. Because appellant was rendered unconscious for the surgery, he argues that it is unreasonable for

him to have to identify exactly which respondent did the negligent act. Because of the difficulty of proof and because the respondents constituted the entire group in charge of appellant during the proceedings, appellant argues that this second element has been met. *See Kolakowski v. Voris,* 83 Ill.2d 388, 47 Ill.Dec. 392, 415 N.E.2d 397 (1980).

Appellant relies on *Ybarra v. Spangard,* 25 Cal.2d 486, 154 P.2d 687 (1944). There, the plaintiff awoke from an appendectomy with a sharp pain between his neck and right shoulder. He brought suit against the attending physician, the surgeon, the hospital, the anesthesiologist, and the nurses. The California Supreme Court held that res ipsa loquitur was proper even though the injury may have resulted from the act of any member of the surgical team and the plaintiff failed to show which defendant's actions caused the injuries.

The Minnesota Supreme Court has never specifically adopted this holding. Two cases involving a surgeon and a hospital, however, have allowed res ipsa loquitur. *See Olson,* 281 N.W.2d 704; *Hestbeck,* 297 Minn. 419, 212 N.W.2d 361.

In *Spannaus,* 308 Minn. 334, 242 N.W.2d 594, the plaintiff brought action against the surgeon, the hospital, and the attending nurse, but failed to name the anesthesiologist as a defendant. After the trial court directed a verdict for defendants, plaintiff appealed, urging the supreme court to adopt the ruling in *Ybarra.* Because the plaintiff failed to bring suit against the entire surgical team, and because one of the possible causes of the injuries was the anesthesiologist's negligence, the supreme court affirmed the trial court and specifically stated, "We do not reach the issue of whether the *Ybarra* rule should be adopted in Minnesota, since Spannaus's case does not even meet the liberalized prerequisites for the application of res ipsa loquitur which were set forth in *Ybarra." Id.* at 337, 242 N.W.2d at 597.

Respondents admit that appellant has overcome Spannaus's problem but they urge this court not to adopt the *Ybarra* ruling. Respondents argue that the *Ybarra* ruling imposes liability on each individual without any evidence that the individual was negligent. They argue that the *Ybarra* ruling has been severely criticized (*see, e.g.,* Adamson, *Medical Malpractice: Misuse of Res Ipsa Loquitur,* 46 Minn.L.Rev. 1043 (1962)), and that it has been rejected in at least three jurisdictions. *See Rhodes v. De Haan,* 184 Kan. 473, 337 P.2d 1043 (1959); *Barrett v. Emanuel Hospital,* 64 Or.App. 635, 669 P.2d 835 (1983); *Talbot v. Dr. W. H. Groves' Latter-Day Saints Hospital, Inc.,* 21 Utah 2d 73, 440 P.2d 872 (1968).

Although some jurisdictions have refused to follow *Ybarra,* a majority of jurisdictions have followed its holding. *See Prosser and Keeton on The Law of Torts* § 39, at 252–53 n. 19 (5th ed. 1984). In *Kolakowski,* 83 Ill.2d 388, 396, 47 Ill.Dec. 392, 396, 415 N.E.2d 397, 401 the Illinois Supreme Court held that "when a patient submits himself to the care of a hospital and its staff and is rendered unconscious for the purpose of surgery performed by independent contracting surgeons, the control necessary under *res ipsa loquitur* will have been met." In *Kitto v. Gilbert,* 39 Colo.App. 374, 381, 570 P.2d 544, 549 (1977), the Colorado Court of Appeals stated:

An insensible passive recipient of treatment administered by other parties who is injured in the course of that treatment is hardly in a position to demonstrate each person's exclusive control. Thus, it is sufficient to show, as was done here, that at the relevant time, the instrumentality was under the control of no person who was not a defendant or an employee of a defendant.

*See also McCann v. Baton Rouge General Hospital,* 276 So.2d 259 (La.1973); *Fogal v. Genesee Hospital,* 41 A.D.2d 468, 344 N.Y. S.2d 552 (1973).

We recognize that in *Hanzel v. Good Earth, Inc.,* 371 N.W.2d 72 (Minn.Ct.App. 1985), this court was recently asked to adopt the *Ybarra* rule and we specifically refused to do so. This court stated as

follows: "No Minnesota case has yet adopted the California theory. Such a change in Minnesota law is more appropriately left to the supreme court." *Id.* at 75. In that case, however, we were not squarely presented with the issue because the court found that the plaintiff failed to establish the first element of res ipsa loquitur. *Id.* In the present case, appellant has established the first element of res ipsa loquitur and we must decide whether to follow the majority of jurisdictions which have adopted the *Ybarra* rule. Because we agree with the rationale of those cases, we hold that the trial court erred in directing a verdict for respondents.

### DECISION

The trial court erred in directing a verdict against appellant. We reverse and remand for a new trial.

Reversed.

FORSBERG, Judge, dissenting:

I respectfully dissent. *Ybarra* creates more problems than it solves. I would prefer that plaintiff should have to prove its case than shift that burden to an innocent defendant.