Garold Eugene HOVEN, et al.,
Respondents,

v.

RICE MEMORIAL HOSPITAL and
E. Miller, petitioners,
Appellants,

Gordon J. Bos, C. Knapper and
J.E. Krause, petitioners,
Appellants.

No. C0–85–2091.

Supreme Court of Minnesota.

Dec. 5, 1986.

Kevin S. Carpenter, St. Cloud, for Rice Memorial Hosp., et al.

P. Stephen Tillitt, Minnetonka, for Gordon J. Bos, et al.

Steven A. Nelson, International Falls, for Garold Eugene Hoven, et al.

KELLEY, Justice.

Respondent, Garold Hoven, filed suit against Rice Memorial Hospital; Dr. Gordon J. Bos, a general surgeon; Dr. J.E. Krause, an anesthesiologist; E. Miller, a nurse anesthetist; and C. Knapper, a nurse assisting the surgeon, all part of a surgical team, alleging professional negligence either during the performance of hernia surgery or immediately thereafter. The suit claimed that negligence caused Hoven to sustain compression injuries to his left and right ulnar nerves.[1] After the evidence was closed, the trial court granted defense motions for a directed verdict on which judgment was subsequently entered. In reversing and remanding for retrial, the majority of a court of appeals panel expressly adopted the modified *res ipsa loquitur* rule first enunciated by the California Supreme Court in *Ybarra v. Spangard,* 25 Cal.2d 486, 154 P.2d 687 (1944).[2] We reverse and remand to the trial court for reinstatement of the judgment.

In reviewing orders of trial courts granting directed verdicts, appellate courts accept as true all evidence favorable to the party against whom the motion was decided as well as all inferences which can be deduced from that evidence. *See, e.g., Reinhardt v. Colton,* 337 N.W.2d 88, 94 (Minn.1983); *Walton v. Jones,* 286 N.W.2d 710, 714 (Minn.1979). Applying that standard, it appears that on January 5, 1982, appellant Dr. Gordon J. Bos performed surgery on respondent Garold Hoven for the repair of bilateral hernias at the Rice Memorial Hospital. On the surgical team in the surgery suite during the operation, in addition to Dr. Bos, were the anesthesiologist, Dr. Krause, and the nurse-anesthetist, E. Miller. Preparatory to the operation, respondent was given a general anesthetic. The surgery lasted the average amount of time for a bilateral hernia operation. None of the surgical cast could remember any noteworthy event that occurred during the procedure. No notations in the surgical chart existed showing that anything unusual occurred during the oper-

1. During trial all parties agreed Nurse Knapper was at all times under the direct control of Dr. Bos, and therefore she was dismissed from the action.

2. *Hoven v. Rice Memorial Hosp.,* 386 N.W.2d 752 (Minn.App.1986).

ation or the post-operative recovery period. Each participant in the surgery, including those not named as a defendant or dismissed, insisted that had anything unusual occurred during the operative procedure, it would have been noted on the chart.

In order to protect the patient's arms and position them away from the operation site, the normal procedure employed during this type of surgery is to extend the arms of the patient away from the operating table by the use of arm boards. With the patient's arms away from the operative area, the surgeon does not have to lean over the arms making it easier for him or her to work. Also, by being positioned on arm boards, the patient's arms are protected from damage by contact with the sharp edges of the operating table. The padded arm boards are attached to the operating table and have adjustable angles. At Rice Memorial Hospital, a towel is generally used as additional padding to protect the patient's arm during the surgical procedure. The arms of the patient are positioned on the arm board so as to allow for proper circulation, and also to prevent pinching or compression of the ulnar nerves of the arm. After positioning, the patient's arms are affixed to the arm boards with a loose binding consisting of either loose tape or elastic bandage in a manner designed to prevent excessive pressure at any point on the arms during the surgery. Anesthetist Miller testified that this was his normal procedure and he was certain no deviation had occurred from it during respondent Hoven's hernia surgery.

Up to the time of the operation, appellant claims he had never sustained problems of arm pain. He contends, however, that upon regaining consciousness in his hospital room following the surgery, the sides of both of his hands were numb. He also claims he complained to the surgeon and a nurse not only then, but repeatedly over the ensuing three days. Members of appellant's family corroborated his complaints to Dr. Bos and to a nurse.[3] Appellant claims Dr. Bos assured him the problem would disappear "in a few days." The pain and tingling (which respondent described as similar to having the "funny bone" hit and hurting constantly thereafter) did not, however, diminish in a few days as suggested by his attending physician.

After terminating the doctor-patient relationship with Dr. Bos, respondent Hoven's problems were diagnosed as being ulnar nerve neuropathy due to compression on the ulnar nerve in each arm. Ultimately, an orthopedic surgeon performed a bilateral ulnar nerve transplant resulting in approximately 80 percent relief to Mr. Hoven. Ulnar nerve compression is a recognized problem associated with general anesthesia.

Respondent's trial theory was that his arms had been negligently positioned on the arm boards or at some point during the post-operative recovery period in such a fashion as to be the source of his ulnar nerve injuries. Respondent was unable to present any evidence tending to directly establish any negligence on the part of the defendants. Accordingly, at the conclusion of the evidence, the trial court directed a verdict in favor of the appellants. Respondent Hoven, however, contends that his case should have been submitted to the jury on a theory of *res ipsa loquitur*. Because the trial court concluded Hoven had failed to establish the crucial requirement of demonstrating that his injuries ordinarily would not have occurred in the absence of negligence, it refused to submit the case to the jury on a *res ipsa loquitur* theory.[4] The court of appeals reversed and remanded for a new trial at which the jury would

3. Dr. Bos denies such complaints were made until several weeks later. Notations substantiating these patient complaints were absent from the hospital records.

4. In so doing, the trial court observed:

I really have difficulty seeing where there's any credible evidence that there's been a breach of the standard of care by any of the named defendants and, furthermore, where there's any credible evidence to support even an inference of negligence that may be permissible under the *res ipsa* theory.

be instructed on a modified *res ipsa loquitur* theory.

■ The doctrine of *res ipsa loquitur*, as heretofore applied in Minnesota law, provides that the claimant must prove three pre-conditions to its application: (1) that ordinarily the injury would not occur in the absence of negligence; (2) that the cause of the injury was in the exclusive control of the defendant; and (3) that the injury was not due to plaintiff's conduct. *Spannaus v. Otolaryngology Clinic*, 308 Minn. 334, 337, 242 N.W.2d 594, 596 (1976). In the instant case, the first two requirements are crucial. We direct our examination, then, to those issues.

■ Did the respondent Hoven prove that his injury ordinarily would not have occurred in the absence of negligence? Our examination of the record leads us to the conclusion he failed in sustaining this burden. Hoven relied on testimony from Dr. Bruce Wilson, a general surgeon. Although Dr. Wilson opined that ulnar nerve injuries occurring during surgery do not usually occur if proper procedures are followed in the placement of the patient's arms, he admitted that on occasion an ulnar nerve compression injury is possible even if all the proper procedures are followed, and even if no member of the surgical team was negligent. He also admitted to but limited knowledge of the position a person's arm would need to be in to result in ulnar nerve neuropathy. Respondent Hoven likewise relied upon Dr. Dwight Jaeger, an orthopedic surgeon. Basing his testimony on this issue solely upon history provided by Hoven, Dr. Jaeger felt the injury occurred sometime during the surgery or immediately afterwards. However, he likewise indicated several possible sources of ulnar nerve injuries and refused to suggest anything done by the surgical team in this case to be improper.[5] The appellants, Dr. Krause and Dr. Bos, likewise testified. The former contended that the use of padded arm boards made it virtually impossible for the exterior compression injury to occur during the surgical procedure. Dr. Bos asserted that many ways existed which would cause a person to have ulnar nerve compression including sustained pressure on it by the body, bumps of the elbow, and/or arthritic conditions around the elbow.[6] Review of all this evidence convinces us that respondent Hoven at trial failed in his burden of proving the first requirement precedent to the submission of a *res ipsa loquitur* instruction to a jury. All doctors who testified at this trial testified there were various causes of this type of nerve compression. None categorically testified that the type of injury sustained in the instant case ordinarily does not occur in the absence of negligence. Plaintiff's expert medical witnesses themselves conceded Hoven's injuries could have resulted from other operating room procedures having nothing to do with negligence of the operating team. Finally, the trial court correctly observed the lack of sufficient evidence to give rise to a negligence inference. Submission of the case to a jury on a *res ipsa loquitur* theory was, therefore properly denied. When the injury could have been caused with substantially equal probability from other causes as well as any acts of defendants, facts, other than just the fact of injury itself from which defendant's negligence may be inferred, must exist before a *res ipsa loquitur* issue can be submitted to the jury. *See, e.g., Collings v. Northwestern Hospital*, 202 Minn. 139, 143–44, 277 N.W. 910, 912–13 (1938) *cited with approval in Olson v. St. Joseph's Hospital*, 281 N.W.2d 704, 708 (Minn.1979).

The court of appeals panel majority based its decision on the almost absolute liability of the modified *res ipsa loquitur* doctrine applied by the California Supreme Court in *Ybarra v. Spangard, supra.*

---

5. His exact words were: "I am not implying anything was improper. There are ways that you protect arms and position them that are routine, and even those efforts can sometimes fail."

6. He also related that respondent had previously informed him that he had had neuritis problems in the past.

Adoption of that analysis would put the burden on the defendants to show how plaintiff's injury occurred and that the injury was caused by no negligence on the part of any team member—in most cases creating what would amount to absolute liability. Having sustained the trial court and reversed the court of appeal panel on other grounds, it is unnecessary at this time for us to address such a proposed dramatic change in our medical negligence law except to note that to this date this court has not adopted the *Ybarra* analysis.

Reversed and remanded for reinstatement of the trial court judgment.