No. 44,356

HENRY F. SCHROEDER, *Appellant,* v. ROBERT J. RICHARDSON and ELDON G. GILLESPIE, *Appellees.*

(411 P. 2d 670)

Opinion filed March 5, 1966.

*Gerald L. Michaud,* of Wichita, argued the cause, and *Russell Cranmer, Orval L. Fisher,* and *M. William Syrios,* all of Wichita, were with him on the briefs for the appellant.

*Richard T. Foster,* of Wichita, argued the cause, and *William Tinker, Arthur W. Skaer, Hugh P. Quinn, Alvin D. Herrington, Lee H. Woodard,* and *William*

*Hensley,* all of Wichita, were with him on the brief for the appellee, Robert J. Richardson.

*Robert M. Siefkin,* of Wichita, argued the cause, and *George B. Powers, Carl T. Smith, John F. Eberhardt, Stuart R. Carter, Robert C. Foulston, Malcolm Miller, Robert N. Partridge, Richard C. Harris, Gerald Sawatzky, Donald L. Cordes, Robert L. Howard, Charles J. Woodin, Mikel L. Stout, Ronald K. Badger, Benjamin C. Langel,* and *Phillip S. Frick,* all of Wichita, were with him on the brief for the appellee, Eldon C. Gillespie.

The opinion of the court was delivered by

HARMAN, C.: This is a suit brought by plaintiff-appellant for personal injuries allegedly sustained in a three car collision. The trial court directed a verdict for plaintiff on the issue of liability but the jury specifically found plaintiff sustained no injury as a result of the collision and awarded plaintiff no damages; judgment for defendants-appellees was entered on such finding and verdict, plaintiff's posttrial motions were overruled, and he appeals. All parties concede the questions raised on appeal depend upon the propriety of the jury's special finding of fact as to plaintiff's injury.

Plaintiff's amended petition alleged in substance that on January 3, 1961, he had stopped his station wagon on the right side of a one way thoroughfare in Wichita preparatory to backing into a parking space along the street curb, when the defendants, each separately operating an automobile behind plaintiff, negligently collided with plaintiff's automobile, causing personal injury to plaintiff; he alleged as a result of the collision he was caused to undergo pain and suffering, injury to his back, shoulders and neck, a fracture of the fifth lumbar vertebra, loss of earnings and earning capacity in the future, and expense for medical treatment, for which he sought recovery in the sum of $25,000.00.

Defendant Richardson filed his answer denying generally the allegations of plaintiff's amended petition, and alleging that at the time and place in question he had stopped his automobile in deference to plaintiff's automobile, and that he was struck from the rear by defendant Gillespie's automobile and thereby caused to collide with plaintiff's automobile, and further expressly denying he was guilty of any negligence which was the proximate cause of any injury to plaintiff and further denying that plaintiff was injured as alleged.

Defendant Gillespie filed his answer likewise denying generally the allegations of plaintiff's amended petition, although admitting

that he was involved in the collision in question, and he specifically denied he was guilty of any negligence causing the same.

Thereafter as a result of a pretrial conference the following order was made:

"2. The remaining issues of fact to be determined are as follows:

"A. Was the defendant Richardson guilty of any negligence which was a proximate cause of the collision?

"B. Was the defendant Gillespie guilty of any negligence which was a proximate cause of the collision?

"C. What were the nature and extent of the plaintiff's injuries, if any?"

Evidence at the trial as to the collision revealed that on January 3, 1961, at about 10:30 a. m. plaintiff was seated behind the wheel of his 1960 Ford station wagon, stopped in the righthand traffic lane of Market street, a one way street. Behind him defendant Richardson was operating a sports model Volkswagen, and defendant Gillespie was driving a 1961 Pontiac automobile behind Richardson, both traveling north on Market street. The Gillespie automobile hit the left rear corner of the Richardson sports car shoving it forward until it came in contact with the rear of plaintiff's station wagon. It further appears that each defendant, in opposition to one another, attempted to show the negligence of the other in causing the collision. As a result, at the conclusion of all the evidence, upon motion of the plaintiff, the court gave the following instruction to the jury:

"No. 3

"You are instructed to return a verdict in favor of the plaintiff against either the defendant Gillespie or the defendant Richardson or both of them.

"The Court has determined that one of the defendants or both of them were negligent and that this negligence was the proximate cause of the collision here involved.

"Your sole function now is to determine the following issues:

"1. Whether the defendant Gillespie was negligent.

"2. Whether the defendant Richardson was negligent.

"3. Whether both of the defendants were negligent.

"4. The nature and extent of plaintiff's injuries, if any, which were proximately caused by the collision and the value to be put thereon."

And the court submitted certain special questions to the jury to which answers were made as follows:

"1. If you find against the defendant Richardson, state what act or acts of negligence you find him guilty of.

"Answer: In accordance with court instruction #3, we find the defendant guilty of negligence in failing to remain alert and give full attention to the safe operation of his vehicle prior to the accident.

"2. If you find against the defendant Gillespie, state what act or acts of negligence you find him guilty of.

"Answer: In accordance with court instruction #3, we find the defendant guilty of negligence in failing to remain alert and give full attention to the safe operation of his vehicle prior to the accident.

"3. Do you find that the plaintiff Schroeder sustained any injuries in the accident of January 3, 1961?

"Answer: No.

"4. If you answer question 3 in the affirmative, state what injuries you find he sustained.

"Answer: —"

The jury returned its verdict in the following form:

"We, the jury, impaneled in the above entitled case, do upon our oath find for the plaintiff and against the defendants, Robert J. Richardson and Eldon G. Gillespie, in the amount of $0000."

The trial court approved the verdict and assessed the costs against plaintiff. Plaintiff moved to set aside the jury's answer to special question No. 3 and he also moved for a new trial as to damages only, which motions were denied. As heretofore indicated, plaintiff's claims of error are essentially based on the contention that there was no evidence to support the jury's finding that plaintiff sustained no injuries as a result of the collision. He argues that under the evidence the jury was compelled to bring in a verdict in some amount in excess of a claimed medical bill, or in the alternative at least to bring in a verdict for nominal damages. Also he argues there was some evidence tending to show property damage to plaintiff's automobile for which the jury might have awarded damages.

Plaintiff did adduce evidence which if given credence would have supported his claim of injury and consequent damage as a result of the collision and some of his subjective statements as to pain and suffering were not directly contradicted. However, his claim of injury was directly controverted from the beginning, and upon the trial there was evidence casting considerable doubt if not actual disbelief upon it, and, additionally there was affirmative evidence to the effect plaintiff suffered no injury at all in the collision. Upon appeal in considering the propriety of a verdict the evidence is to be viewed in a light most favorable to sustaining the verdict (*Kitchen v. Lasley Co.*, 186 Kan. 24, 348 P. 2d 588). It is not necessary or desirable to review all the evidence. Brief mention will suffice to illustrate the problem involved. A photograph of plaintiff's station wagon introduced into evidence by defendants revealed

only minor indentations and blemishes on the rear end which plaintiff testified were not present prior to the collision. Whatever property damage there was plaintiff did not have it repaired and made no claim for it. At the time of the collision he made no complaint of personal injury to the defendants or to an investigating officer and did not act as if he were hurt. In a written statement made shortly thereafter he changed and initialled the statement to delete any mention that his station wagon was knocked forward by the impact, and he made no mention of back pain or injury to his back. Plaintiff never consulted his family doctor and first consulted a doctor about his claimed injury almost two years after the collision, and then after consulting his attorney. The history given this doctor by plaintiff was that in May of 1961 he was backing his car into a parking place when a parked truck suddenly pulled forward and struck him from the rear. This doctor testified that a condition of plaintiff's fifth vertebra could either be the result of a fracture or of a congenital malformation and he found no other objective evidence of injury. A doctor called by defendants testified that the condition could not be the result of a fracture but was congenital, and he found nothing from his examination indicating injury or aggravation of an unstable back condition. Both doctors testified plaintiff's unstable back could be attributed to an overweight condition. There was other evidence, both of an impeaching and of an affirmative character indicating noninjury, but it need not be further detailed.

The only damages sought by plaintiff were for personal injuries. The answers filed by defendants first raised the issue that plaintiff suffered no injury as a result of the collision. This issue was reiterated in the order on pretrial conference as follows:

"C. What were the nature and extent of the plaintiff's injuries, *if any?*" (Emphasis supplied.)

Then after evidence was adduced on the issue the jury was told by the court to determine:

"The nature and extent of plaintiff's injuries, if any, which was proximately caused by the collision and the value to be put thereon."

Additionally the court told the jury:

"You are instructed that the question of whether or not the plaintiff is entitled to recover from the defendants, or either of then, for damages is one for your sole and exclusive determination from the evidence submitted in the trial and the instructions of the Court.

"If you find that the plaintiff is entitled to recover damages from the defendants, or either of them, then the measure of plaintiff's damages is what is denominated 'Compensatory Damages', that is, such damages as will fully compensate him for the injuries sustained."

The court followed this with an instruction defining the measure of damages to be used in the event of recovery for personal injury, and it also gave routine instructions that the burden of proof was upon the plaintiff and that the jury was the exclusive judge of fact questions, and on weight of the evidence and credibility of witnesses and the factors to be applied in determining the same. Plaintiff's counsel specifically stated he had no objection to any of the instructions, and no objection was made to the special questions submitted. No trial errors of any kind are asserted prior to the rendition of the verdict.

Upon this state of the case the jury returned the finding and verdict complained of. While the form of verdict submitted to the jury and the direction of the trial court to it to return a verdict in favor of the plaintiff against either or both of the defendants might possibly have been more precisely framed, the meaning and intent seem clear. The instructions are to be considered as a whole and in their entirety, and each instruction is to be considered in connection with all other instructions in the case (5 Hatcher's Kansas Digest, rev. ed., Trial, § 186; 9 West's Kansas Digest, Trial, § 295 [1]). Clearly what the court did was to determine as a matter of law, as expressed in the second paragraph of instruction No. 3, that one or both of the defendants was negligent in causing the collision, and it left to the jury to decide which, and also the other issues, to-wit: The nature and extent of any injury and whether proximately caused by such negligence, and the amount of damage, if any, to be awarded. Such procedure need not be considered too unusual when it is recalled that sometimes automobiles collide or come into contact with other automobiles as a result of negligent operation under such circumstances as to cause only slight property damage and without any personal injury resulting or being claimed by occupants of the automobiles.

It cannot be said as claimed by appellant that there is any inconsistency between the verdict and the special finding when viewed in the light of the instructions. The verdict clearly reflects the jury's certainty that the plaintiff sustained no injury attributable to the collision, expressed in the best manner afforded it by the court's directions, and wholly consistent with its special finding of no in-

jury. Had the jury made an award for damages this would have been inconsistent with its special finding and the latter would of course, have been controlling. In *King v. Consolidated Products Co.*, 159 Kan. 608, 157 P. 2d 541, the jury verdict in an automobile damage action was for defendant from which plaintiff appealed upon the ground the verdict was not supported by the evidence. The jury was instructed on the doctrine of contributory negligence. We think this court's statement on the function of instructions is pertinent here:

"The purpose and function of instructions is to inform the jury concerning the issues joined by the pleadings and to advise it regarding the verdict, or verdicts, it is possible to render on evidence actually adduced. As shown by the above quoted instruction the jury was informed it was possible for it to render the precise verdict it did render. The above quoted instruction clearly was based upon the theory there was evidence in the record from which the jury could find both parties guilty of negligence. The record discloses no objection at the trial or on the hearing of the motion for a new trial to any instruction on the subject of contributory negligence or to the particular instruction above quoted. Moreover appellant does not now specify 'erroneous instructions' as a ground for a new trial. Insofar as our review is concerned those instructions became the law of the case. Manifestly appellant is in no position now to insist a new trial should have been granted for the reason the jury failed to assess damages against one of the parties." (p. 610.)

Plaintiff's argument assumes it was uncontroverted that he received some injury in the collision, and he would have us apply the familiar rule that where there is no evidence to support a finding then that finding must be set aside. As previously indicated this approach overlooks the fact that the condition of plaintiff's health and its relation to the collision was a highly controverted issue of fact throughout with the result that the evidence thereon was such that it could not be said that it was undisputed that plaintiff received some injury. It also overlooks the proposition that we are here concerned with a negative finding of fact, as contrasted to an affirmative one, against one upon whom as to the existence of such fact the burden of proof rests. In *In re Estate of Johnson*, 155 Kan. 437, 125 P. 2d 352, the court in considering a negative finding against a claimant stated:

"As the trier of the facts, it was the province and duty of the court to determine what weight and credence it would give to the testimony of the witnesses on both sides of the case. Of course, a jury or court cannot arbitrarily or capriciously refuse to consider the testimony of any witness but, on the other hand, it is not obliged to accept and give effect to evidence which, in its honest opinion, is unreliable, even though such evidence is uncontradicted. (*State, ex*

*rel., v. Woods,* 102 Kan. 499, 170 Pac. 986; *Potts v. McDonald,* 146 Kan. 366, 69 P. 2d 685; *State v. Jones,* 147 Kan. 8, 11, 75 P. 2d 230; *Briney v. Toews,* 150 Kan. 489, 494, 95 P. 2d 355; *Johnson v. Soden,* 152 Kan. 284, 103 P. 2d 812.)

"Plaintiff contends this court has frequently reversed a trial court on findings of fact where there was no evidence to support the findings made. That is true where there were affirmative findings of fact unsupported by the record. Here, however, we have a negative finding of fact—a very different thing. (*Potts v. McDonald,* supra, p. 369.) Here the court, after hearing all of the evidence, was convinced the claim should not be allowed, and so found. The court quite apparently either did not believe the testimony offered in support of plaintiff's claim or the evidence was not sufficiently clear and convincing to persuade the court concerning the validity of the claim.

"Appellate courts cannot nullify a trial court's disbelief of evidence (*Kallail v. Solomon,* 146 Kan. 599, 602, 72 P. 2d 966), nor can they determine the persuasiveness of testimony which a trial court may have believed. The appearance and demeanor of a witness, which appellate courts never have the opportunity of observing and which cannot be transmitted to the cold records of this court, may be, and sometimes are, far more persuasive than positive testimony." (pp. 439, 440.)

In *Kitchen v. Lasley Co.,* 186 Kan. 24, 348 P. 2d 588, a damage suit for personal injury, the jury specifically found the defendant guilty of negligence but also found that adequate proof of injury had not been shown and it returned a general verdict for defendant. Similar claims of error were made there upon appeal as here. In affirming the judgment for defendant this court quoted with approval the remarks of the trial court in denying a motion for new trial as follows:

"'. . . Under the instructions given by the court, the burden of proof was upon the plaintiff to prove by preponderance of the evidence, not only that the defendant was negligent, but also that as a direct and proximate result of such negligence the plaintiff was injured. The jury in its answers to special questions submitted found the defendant guilty of negligence, but by its general verdict for the defendant found that the plaintiff had failed to prove by preponderance of the evidence that such negligence caused injury and/or damage to the plaintiff. Whether or not the plaintiff was injured and/or damaged as a result of the negligence of the defendant, was a pure jury question which was decided adversely to the plaintiff. The plaintiff introduced testimony from which the jury could have believed that the plaintiff was injured as a result of defendant's negligence, but this evidence did not convince the jury, as is demonstrated by the general verdict for the defendant. . . .'" (p. 27.)

Plaintiff frankly concedes he is now foreclosed by the jury's finding from claiming any vertebral fracture as a result of the collision. If this be so, and we grant that it is, then logically it may be asked, why is plaintiff likewise not foreclosed from now claiming any other

less serious consequence of the collision, all degrees of injury being controverted? We think that he is. The effect of the negative finding of fact in the case at bar is that plaintiff did not sustain the burden of proof requisite to his recovery of damages. There is nothing in the record to suggest any arbitrary or capricious disregard of undisputed evidence in the refusal to allow damages to plaintiff and nothing indicates it was the result of some extrinsic consideration such as bias, passion or prejudice on the part of the jury. Plaintiff's claim for medical expense depends upon and must stand or fall along with his general claim for personal injury.

We have examined cases cited by plaintiff. Generally these involve situations where there was no question but what some injury was sustained in the incident in question and the only issue thus became the amount of damage. That is not the situation here, and we see no reason for disturbing the jury's finding on the controverted fact issue of personal injury.

Plaintiff now suggests he was entitled at least to an award for property damage to his automobile or for nominal damage. This theory was never presented to the trial court, nor was any issue thereon presented to the jury in any way, either expressly or impliedly. The case was submitted to the jury wholly upon the theory of compensatory damages for personal injury. What has been indicated heretofore as to the instructions shaping the issues, advising as to possible verdicts, and becoming the law in the case would be applicable here. The record reveals, moreover, that when defendants' counsel attempted to cross-examine plaintiff on the nature and extent of damage to his automobile, obviously attempting to minimize any personal injury by showing how slight the property damage was, plaintiff's counsel objected to this line of questioning, and we are advised in oral argument that in presenting this case to the jury both sides emphasized this was not a property damage case.

Plaintiff complains that the costs were assessed against him erroneously in view of the court's direction to the jury on the issue of liability. As heretofore indicated this disposed of but one phase of the lawsuit. It must be abundantly clear that plaintiff was not the prevailing party, and the trial court so considered in assessing costs against him, *as of course,* and properly so (K. S. A. 60-2002[a]).

No errors appearing in the trial court's actions, its judgment and orders are affirmed.

APPROVED BY THE COURT.