No. 45,959

GENE VANNAMAN and GROENDYKE TRANSPORT, INC., *Appellants,* v. DUANE E. CALDWELL and VERNE I. REDFORD, *Appellees.*

(485 P. 2d 1373)

Opinion filed June 12, 1971.

*Otto J. Koerner,* of Wichita, argued the cause, and *G. E. Carnahan,* of Wichita, was with him on the brief for the appellants.

*Stanley G. Andeel,* of Foulston, Siefkin, Powers and Eberhardt, of Wichita, argued the cause, and *Robert C. Foulston,* of the same firm, was with him on the brief for the appellee, Verne I. Redford.

The opinion of the court was delivered by

FOTH, C.: This action arises out of two consecutive motor vehicle accidents which occurred about 7:45 a. m. on August 17, 1967, on a county road known as Hunter Boulevard, approximately 6.7 miles north of Nickerson, Kansas.

There were three vehicles involved. The first was a semi-trailer gasoline transport truck owned by plaintiff-appellant Gene Vannaman, leased from him and operated by plaintiff-appellant Groendyke Transport, Inc., and driven by Groendyke's employee Bernard W. Hinck, who is not a party to the action. The second was a 1966 Chevrolet driven by defendant-appellee Verne I. Redford, and the third a 1957 Ford driven by defendant-appellee Duane E. Caldwell. Because of the multitudinous claims asserted by each in the trial court, the above persons will be referred to in this opinion by name.

Hunter Boulevard is a two lane road running north and south, with an overall width of 24 feet. The focal point of the incidents here is a bridge known as Cow Creek Bridge, which has abutments

and railings some 152 feet in length. It rises in the center some 6.4 feet above the points 700 feet to the north and 700 feet to the south of the center of the bridge. Some 594 feet north of the north end of the bridge is the south end of the abutment to a smaller bridge, referred to as a "culvert."

The truck driven by Hinck and the Redford car were proceeding south. Before reaching the culvert Redford had pulled out to pass the truck and proceeded to do so, pulling abreast of the truck at about the culvert, driving about 65 miles per hour. There is a conflict in the testimony as to when Redford returned completely to the southbound lane. Redford testified that it was about 150 to 250 feet north of the north end of the bridge; Redford's daughter who was a passenger in his car testified they were in the southbound lane all the time their car was on the bridge; Hinck testified that Redford's left wheels were still slightly over the center line when Redford reached the center of the bridge, although in a signed statement given the day of the accident he had stated that Redford had returned to the southbound lane before entering the bridge.

At this point Caldwell enters the scene heading north at about 70 miles per hour. He testified that as he approached the bridge he saw the Redford car in the northbound lane at the north end of the bridge, and believing Redford could not return to the southbound lane in time to avoid a collision, at the speed the two cars were going, he applied his brakes. This caused his car to swerve to the left out of control.

The result was a collision, left front to left front, between the Redford and Caldwell cars. The point of impact was 9 feet south of the south end of the bridge, 8 feet from the west edge and 16 feet from the east side of the road—in other words 4 feet into Redford's lane.

After the impact the Redford car proceeded some 141 feet south, ending up in the ditch on the west side of the road. Caldwell's car was pushed back about 12 feet from the point of impact and was left immobilized headed across the road, blocking both lanes, in the face of the oncoming truck.

Hinck, in the meantime, was following Redford south at about 55 miles per hour. He testified that he saw no reason to anticipate an accident, and in fact was unaware of the presence of the Caldwell car until he saw it dip and pull to the left into the southbound

lane. Until then his attention had been concentrated on the Redford car. At that point Redford was back in his lane. Hinck, seeing no place to go, slammed on his brakes, leaving 189 feet of intermittent skid marks until the impact of his truck with the Caldwell car 21 feet south of the south end of the bridge. Both the truck and the Caldwell car came to rest on the east side of the road, partially in the ditch.

Thereafter this suit was commenced by Vannaman and Groendyke against Redford and Caldwell for damages to the plaintiff's respective interests in the truck. Subsequent pleadings, insofar as pertinent, were that Caldwell filed a counter claim against each plaintiff and a cross claim against Redford for personal injuries, and Redford filed a cross claim against Caldwell for damages to his car.

In its pre-trial order the court below recited the contentions of the respective parties. Highly summarized, they are that each denied any negligence on his own part, each alleged specific acts of negligence and/or contributory negligence on the part of each adverse party, and that each claimed the driver of his respective vehicle was confronted with a sudden emergency. Later stipulations were made as to the amount of damages suffered by each party except for Caldwell's claim for personal injury.

At this stage the matter was tried to a jury. At the conclusion of the trial eight questions were posed to the jury which were denominated a "Special Verdict." The questions and the jury's answers were as follows:

"1. Do you find that plaintiff Vannaman should have judgment against defendant Caldwell for Vannaman's damages? No.

"2. Do you find that plaintiff Groendyke Transport, Inc., should have judgment against defendant Caldwell for the trucking company's damages? No.

"3. Do you find that plaintiff Vannaman should have judgment against defendant Redford for Vannaman's damages? No.

"4. Do you find that plaintiff Groendyke Transport, Inc., should have judgment against defendant Redford for the trucking company's damages? No.

"5. If your answer to 2 is no then do you find that defendant Caldwell should have judgment against plaintiff Groendyke Transport for Caldwell's damages? No.

"6. Do you find that defendant Caldwell should have judgment against defendant Redford for Caldwell's damages? No.

"7. If your answer to 6 is no do you find that defendant Redford should have judgment against defendant Caldwell for Redford's damages? No.

"8. If you find that defendant Caldwell should have judgment against any party what do you find his damages to be? None."

As may be seen, except for lack of inquiry as to the stipulated damages, these questions amounted to no more than general verdicts designed to cover the liability aspects of all the various claims, counter claims and cross claims. The jury was asked no special questions as to negligence, contributory negligence, proximate cause, or the weight given to the doctrine of emergency by the jury in reaching its verdict.

From the judgment rendered on this verdict Vannaman and Groendyke appeal. They complain of no trial error, did not object to the instructions or the form of the verdict, and neither made a motion for a directed verdict.

Although they put it in several different ways, appellants' basic complaint here is that the verdict was against the weight of the evidence. Boiling their argument to its essence, they insist the accidents *must* have been caused by someone's negligence, and it was not Hinck's and could not have been Vannaman's, who under the instructions was a bailor not chargeable with any negligence of Hinck's. More will be said of Vannaman's position later.

The difficulty with this argument is that it overlooks this court's long-standing principles as to the scope of appellate review. As we said recently in *Brohan v. Nafziger,* 206 Kan. 58, 476 P. 2d 649:

"This court will not weigh the evidence or pass upon the credibility of the witnesses. When findings of fact are attacked for insufficiency of evidence, or as being contrary to the evidence, the power of this court begins and ends in determining whether there is any competent substantial evidence to support the findings." (Syl. ¶ 1.)

To the same effect, See *Morris v. Hoesch,* 204 Kan. 735, Syl. ¶ 3, 466 P. 2d 272.

Similar principles were pronounced in a case much like this one, *State Farm Mutual Auto Ins. Co. v. Cromwell,* 187 Kan. 573, 358 P. 2d 761:

"When the error assigned is that the findings and judgment are contrary to the evidence, it is only necessary on appeal to consider whether there is some competent and sufficient evidence upon which the judgment is based; and a consideration or recital of the contradictory evidence cannot aid in correctly determining that question." (Syl. ¶ 1.)

"A judgment of the trial court imports a general finding in favor of the prevailing party which determines every controverted question of fact in support of which evidence has been introduced, and raises the presumption that all facts necessary to sustain and support the judgment have been found." (Syl. ¶ 2.)

"The question of negligence, including the determination of proximate

cause, ordinarily rests in the province of the jury, or the court, as the trier of the facts." (Syl. ¶ 3.)

In particular, when a jury verdict is involved we have said (*Schroeder v. Richardson,* 196 Kan. 363, 411 P. 2d 670):

"Upon appeal in considering the propriety of a verdict the evidence is to be viewed in a light most favorable to sustaining the verdict." (Syl. ¶ 1.)

Our question, then, is to determine whether there is any hypothesis or combination of hypotheses under which the jury might find from the evidence that none of the parties should recover from any other party. From the evidence as outlined above, several suggest themselves immediately. They could have found none of the parties negligent, or all of the parties negligent; they could have found that any negligence which existed was not the proximate cause of any damage suffered; they could have found that the conduct of each driver was not culpable because of the emergency with which he was faced; they could have found that none of the parties sustained his burden of proof.

What has been said virtually disposes of this case. Vannaman's claim, however, requires some additional consideration. As to him the jury was given, without objection below or in this court, the following instruction:

"You are instructed that plaintiff Vannaman is not responsible for any acts of the truck driver, so any negligence of Bernard W. Hinck would not bar Vannaman from recovering from defendants, or either of them, based upon negligence of such defendant. It should be understood, nevertheless, that Vannaman cannot recover if you find that Hinck was negligent and that his negligence was the sole cause of Vannaman's damage."

Under this instruction the jury's conclusion that Vannaman should not recover could be predicated on a finding (*a*) that neither Redford nor Caldwell was negligent, or (*b*) that Hinck's negligence was the sole cause of Vannaman's damage. The first was clearly a permissible inference from the evidence on a number of theories. The second could have been based on Hinck's failure to observe the presence of the Caldwell car until it swerved into the left lane, and hence his failure to reduce speed in time to avoid his impact with the Caldwell car.

Further, the general finding against Vannaman may be considered as in the nature of a negative finding. As to such we have said (*American Housing & Investment Co. v. Stanley Furniture Co.,* 202 Kan. 344, 449 P. 2d 561):

"The effect of a negative finding of fact by a jury, as contrasted to an

affirmative one, against one upon whom the burden of proof rests, is that such party did not sustain that burden. Absent arbitrary and capricious disregard of undisputed evidence or some extrinsic consideration such as bias, passion or prejudice on the part of the jury, such finding cannot be disturbed. Appellate courts cannot nullify a jury's disbelief of evidence nor can they determine the persuasiveness of testimony which a jury may have believed." (Syl. ¶ 1.)

See also *Schroeder v. Richardson,* 196 Kan. 363, Syl. ¶6, 411 P. 2d 670.

Thus the jury could have found as to Vannaman, as it could as to the other parties on *their* affirmative claims, that he failed to sustain his burden of proof.

This is basically a fact case in which the issues were properly submitted to and determined by the jury. There being competent evidence to support their verdict, it cannot be disturbed on appeal.

The judgment is affirmed.

APPROVED BY THE COURT.