No. 46,869

Nonie M. Tatro, *Appellant*, v. Lueke B. Lueken, *Appellee*.

(512 P. 2d 529)

Opinion filed July 14, 1973.

*Gerald L. Michaud,* of Michaud, Cranmer, Syrios and Post, of Wichita, argued the cause, and *Russell Cranmer,* of the same firm, and *Orval L. Fisher,* of Wichita, were with him on the brief for the appellant.

*Jerry G. Elliott,* of Foulston, Siefkin, Powers and Eberhardt, of Wichita, argued the cause, and *Robert C. Foulston,* of the same firm, was with him on the brief for the appellee.

The opinion of the court was delivered by

KAUL, J.: In this action Nonie M. Tatro, plaintiff-appellant, has sued defendant-appellee, Lueke B. Lueken, a medical doctor specializing in gynecology, for alleged malpractice. The case was tried to a jury and plaintiff has perfected this appeal from a judgment entered on a defendant's verdict.

On appeal plaintiff claims the trial court erred in not submitting the doctrine of *res ipsa loquitur* to the jury and in submitting the issue of informed consent when, as plaintiff asserts, the evidence showed as a matter of law that plaintiff's informed consent had not been obtained. Plaintiff further contends there was no substantial evidence to support the jury's verdict for the defendant.

The evidence discloses that in 1966 plaintiff suffered excessive bleeding during her menstrual periods. She was first examined by Dr. Lueken, the defendant, in February 1966. He recommended a D & C (dilation and curettage) which was performed in August 1966. Plaintiff's problems were not resolved and she returned to defendant in October 1966. After a further examination defendant advised plaintiff that the trouble was caused either by a fibroid tumor or a narrowing of the womb. Following another pelvic examination in November 1968 defendant advised plaintiff that he had located a fibroid tumor and that plaintiff needed an abdominal hysterectomy. Because of the demands of her employment as a hairdresser during the holiday season, plaintiff asked that the operation be postponed until January of 1969, to which defendant agreed. On January 7, 1969, plaintiff was operated. She got out of bed for the first time three days later and was able to urinate normally, although she testified she had a pulling pain in the abdomen. Plaintiff was discharged from the hospital on January 14. During the night of January 21-22 plaintiff experienced a flood of urine pouring from the vagina and immediately contacted defendant who examined her the following day and treated her by the insertion of a catheter. Plaintiff's condition did not improve

and she again saw Dr. Lueken on January 27. During this examination he observed urine entering the vagina.

Dr. John W. Warren, Jr., a urologist, associated with Dr. Lueken at the Wichita Clinic, was called in consultation. After an examination, Dr. Warren diagnosed plaintiff's condition as a vesicovaginal fistula. Dr. Warren tried various means in attempting to control the bladder leakage and saw plaintiff every two weeks until April when examinations were continued on a monthly basis. Dr. Warren testified that in the beginning there was an opening between the bladder and the vagina which he denominated a fistula; that it was approximately one and one-half centimeters in diameter and that it had reduced in size to approximately one-half centimeter by September. Dr. Warren testified that because of the reduction in size he had hopes of a spontaneous closing of the fistula; however, that did not come about. Surgery was performed by Dr. Warren on September 15, 1969, which corrected the condition.

Plaintiff filed this action on June 16, 1970. In her petition plaintiff bases her claim on two counts. She first alleged that because of the negligence of defendant in performing the hysterectomy she suffered permanent injury to her bladder and other parts of her body and had to undergo additional surgery. For her second claim plaintiff relied upon the doctrine of res ipsa loquitur alleging that the procedures, techniques, instrumentalities and equipment employed in the hysterectomy were under the complete and exclusive control of defendant; that plaintiff was without knowledge of the proper techniques and procedures used by defendant; that she relied wholly upon defendant to use proper and safe techniques; that the injuries which she suffered do not ordinarily occur in the absence of negligence; and that she was entitled to recover upon the doctrine of res ipsa loquitur.

Defendant answered denying the allegations of plaintiff on both counts and further alleging that plaintiff's second claim of res ipsa loquitur did not state facts sufficient to allow a recovery and should be dismissed.

A pretrial conference was had, and in the order drawn it was stated that plaintiff sustained a vesicovaginal fistula which was repaired by John W. Warren, Jr., M. D., in the St. Francis Hospital on September 16, 1969. The pretrial order further reflects that the issues to be determined were essentially: (1) Whether de-

fendant was negligent as contended by plaintiff, and if so whether such negligence proximately caused plaintiff's injuries; (2) whether plaintiff was entitled to recover under the theory of *res ipsa loquitur;* (3) whether plaintiff was entitled to recover under the theory of lack of informed consent; and (4) the extent and nature of plaintiff's injuries and damages.

Plaintiff's evidence consisted of her own testimony and that of the defendant, Dr. Lueken, Dr. Warren, and Dr. R. M. Gouldner, who were called as witnesses on behalf of plaintiff. The three physicians were all very familiar with an abdominal hysterectomy. All testified candidly and forthrightly concerning the techniques and proper medical standards to be observed in such an operation. They agreed that a vesicovaginal fistula in connection with an hysterectomy could be caused by (1) cutting the bladder; (2) clamping the bladder and vagina together; (3) stitching or suturing the bladder and vagina together; (4) a cancer of the vagina or of the bladder and a complication of radium, cobalt, and x-rays; and (5) an abscess which can rupture both ways—into the vagina on the one side and into the bladder on the other. The three doctors frankly testified that any one of the first three would constitute a departure from good medical practice. It was undisputed that cancer, radium and cobalt treatment could be eliminated in plaintiff's case and also a cutting during the operation, as that would precipitate immediate leakage of urine into the vagina; whereas in plaintiff's case the flow of urine did not appear until fourteen days after the operation. Thus, the possible causes were narrowed to three: stitching, clamping or an abscess. The testimony was that time wise and also consistent with all other factors to be considered the fistula in plaintiff's case could have stemmed from any one of these three causes; and further that in plaintiff's case it was impossible to ascertain which of the three might have caused the fistula. Their testimony was consistent in that a clamping or stitching of the bladder is a departure from good medical practice; whereas an abscess is not a surgical injury, but a complication attendant to such surgery.

Dr. Lueken, the defendant, is a board certified gynecologist who has practiced his specialty in Wichita since 1963, and since then has performed from fifty to one hundred hysterectomies a year and has never had a vesicovaginal fistula in a noncancer case. He testified that plaintiff's operation was routine, there was no ex-

cessive bleeding or any other complication to increase the difficulty of the operation. He explained the operation in great detail and described how he separated the vagina from the bladder wall and protected the bladder by inserting surgical sponges. Dr. Lueken did not know what caused the fistula but he testified:

". . . I was the one that sewed up the vagina during the course of the operation and I was the one that did all the stitching that was done in her abdomen. I was the one that did all the cutting that was done. I paid attention to what I was doing and I knew where I was putting the needle when I made the stitches. I knew where I was putting the clamps when I used the clamps. In this operation I did not cut, stitch or clamp Mrs. Tatro's bladder. I am sure of that."

Dr. Gouldner is a surgeon who has practiced in Wichita for over fifty years and has performed "hundreds and hundreds of abdominal hysterectomies." He testified that in addition to cutting, clamping or stitching, an abscess could cause a fistula and that it is possible to have an abscess with no visible evidence of any infection His testimony was consistent with Dr. Lueken's as to the proper techniques to be used in performing an hysterectomy.

Although Dr. Warren was an associate of defendant and Dr. Gouldner a friend, each of the doctors, including defendant, testified with candor and responded without hesitancy to the careful and exhaustive interrogation of plaintiff's counsel. The standards of good medical practice in the performance of an abdominal hysterectomy were clearly established and cutting, clamping or stitching the bladder in an uncomplicated operation were clearly identified as deviations from good medical practice.

Before proceeding to discuss the points raised on appeal we pause to observe that the record in this case demonstrates that counsel on both sides proceeded expeditiously and proficiently in discovery and pretrial matters, culminating in the pretrial order referred to in which the issues were clearly delineated, and medical textbooks and documentary evidence were produced and exchanged, all in the manner of good trial practice. Likewise, the issues are succinctly stated and well-briefed on appeal.

The first point asserted, and that which plaintiff most vigorously argues on appeal, is that the trial court erred in not submitting plaintiff's requested instruction relating to the doctrine of *res ipsa loquitur* to the jury. Plaintiff maintains that the evidence in this case properly established a framework for the application of *res ipsa loquitur*. Plaintiff relies heavily upon our decision in *Voss*

*v. Bridwell,* 188 Kan. 643, 364 P. 2d 955, and also maintains that *Emrie v. Tice,* 174 Kan. 739, 258 P. 2d 332, and *Collins v. Meeker,* 198 Kan. 390, 424 P. 2d 488, support her position.

It is readily apparent from the opinions in the many medical malpractice actions reaching this court that it has long recognized the general rule that a physician or surgeon is presumed to have carefully and skillfully treated or operated his patient and there is no presumption of negligence to be indulged from the fact of injury or adverse result. As we have often said, the rule of *res ipsa loquitur* is one of evidence, rather than of substantive law, and generally becomes applicable in a negligence action where there is no direct proof of negligence, but where circumstances are established so as to leave no conclusion other than that defendant be at fault. Because of the favorable presumption of skill and care and the nature of medical practice and treatment, which usually requires expert testimony to establish the facts of a case, the problems encountered in determining the applicability of *res ipsa loquitur* in a malpractice action are more difficult and in this jurisdiction, as in most, the availability of the doctrine is generally treated in a somewhat different manner than that employed in the ordinary negligence action.

In our opinion in *Voss,* previous decisions in this and other jurisdictions, relating to the availability of *res ipsa loquitur* in medical malpractice actions were discussed in depth. Established rules and the rationale thereof which militate against the application of the doctrine in malpractice cases were pointed out. Our holding concerning the applicablility of the doctrine was set out as follows:

"In medical malpractice cases where the action is not founded upon the mere failure of a physician or surgeon to secure the desired result, or upon the merits of a diagnosis or of scientific treatment, the doctrine of *res ipsa loquitur* has application to those situations in which the injury results from an unusual occurrence, not ordinarily found where the service performed followed the usual procedure of those skilled in that particular practice, provided a layman is able to say as a matter of common knowledge and observation, that the consequences of professional treatment were not such as would ordinarily have followed if due care had been exercised." (Syl. ¶ 6.)

The rules governing applicability of the doctrine set out in *Voss* were subsequently restated in *Collins v. Meeker,* supra, wherein *res ipsa loquitur* was held not applicable under the established facts. As pointed out by Mr. Justice Fontron in *Collins* this court has applied the rule of *res ipsa loquitur* in only two medical malpractice cases—*Voss* and *Emrie.* In *Voss* and *Emrie* as well as

in all other medical malpractice cases prior to *Collins* (1967), wherein the application of *res ipsa loquitur* was sought, the question was presented to this court at the pleading stage of the case where the trial court had erroneously overruled defendant's demurrer to the petition as in *Waddell v. Woods*, 158 Kan. 469, 148 P. 2d 1016, or correctly sustained a demurrer as in *Rhodes v. De-Haan*, 184 Kan. 473, 337 P. 2d 1043. In *Waddell, Emrie, Rhodes* and *Voss* this court dealt with the issue whether the respective petitions alleged facts sufficient to state a cause of action on the theory of *res ipsa loquitur*. In the instant case, we have the benefit of the record of a complete trial. By coincidence the case of *Funke v. Fieldman*, 212 Kan. 524, 512 P. 2d 539, is presented in the same posture. Generally speaking, we believe the better practice in a close case is to reserve determination of the applicability of the doctrine until all of the evidence is before the trial court. At this juncture the trial court is in the most advantageous position to resolve the question under the rules governing applicability of the doctrine.

The case of *Collins v. Meeker*, supra, reached this court on appeal from a summary judgment; however, the case was filed subsequent to our new civil code of procedure, and the facts had been fully developed in discovery depositions and three pretrial conferences; thus the posture of *Collins* and that of the instant case may be said to be the same. We believe the factual situation, as it relates to the application of the rule of *res ipsa loquitur*, in *Collins* is so analogous to that before us that the decision on the point therein controls our disposition of the present appeal.

*Collins* involved an operation to correct plaintiff's inguinal hernia. There was evidence that plaintiff's inguinal ring was rebuilt so tightly that it interfered with the flow of blood to and from the left testicle and the flow of secretions therefrom. A year or so after the first surgey, Dr. Mastio, one of the defendants, performed an exploratory operation at the site of the original incision and in so doing incised the spermatic cord. The trial court rendered summary judgment for all defendants. On appeal we reversed as to Dr. Meeker, who performed the original surgery, and Dr. Mastio. The case was remanded for trial on the issue of negligence as to Drs. Meeker and Mastio. This court rejected plaintiff's argument that the doctrine of *res ipsa loquitur* was applicable. In the *Collins* opinion we restated the established rules in this jurisdiction which particularly militate against the application of

the doctrine in malpractice cases as set forth in *Voss*. The injuries in *Voss* and *Emrie* were described and it was stated that neither case was authority for applying the doctrine to the facts in *Collins*. The *Collins* decision rested on the principle stated in this fashion:

"It is only in those cases where common knowledge, observation and experience has shown that injury would not have resulted to a patient if reasonable medical or surgical care had been used, that negligence can be inferred from the injury, itself, and the doctrine of *res ipsa loquitur* can be applied." (p. 400.)

To the same effect 70 C. J. S., Physicians and Surgeons, § 62a, p. 992, was quoted:

"'. . . The doctrine of *res ipsa loquitur* is not applicable, where the common knowledge or experience of men is not extensive enough to permit it to be said that plaintiff's condition would not have existed for negligence of the person charged. . . .'" (p. 400.)

In other words, *Collins* held that the incision of a spermatic cord in connection with an inguinal hernia operation, while a basis for an action in negligence, was not one of those cases where common knowledge showed that the injury would not have resulted to a patient if reasonable medical or surgical care had been used. The inguinal ring in *Collins* was the immediate subject of surgery; the spermatic cord was an apparently healthy part of the body located in the immediate area of surgery. So in the case at bar, the plaintiff's bladder was not the object of surgery, but it was in the immediate area and had to be separated from the vagina wall in order that the fibroid tumor could be removed from the vagina. We believe the intricacies of an abdominal hysterectomy are at least comparable, if not more complex, than a hernia operation. We have no difficulty in distinguishing the facts here from the allegations of the petition in *Voss*, wherein it was alleged that after plaintiff was under anesthesia for a mastoid operation, which was never performed, an endotracheal tube was inserted in plaintiff's esophagus instead of into and past the larynx, thus depriving plaintiff of air and oxygen while he was unconscious, and as a result rendering plaintiff totally decerebrate. Obviously, the gross misplacement of the tube was negligence and if proved as alleged was clearly the cause of the injury suffered. We held that upon these alleged facts a layman would be able to say as a matter of common knowledge that the consequences of professional treatment were not such as would ordinarily have followed if due care had been exercised, thus presenting a situation in which the doctrine was applicable.

Likewise, in *Emrie* we held the petition made out a prima facie case under the doctrine. There it was alleged that in removing a wart from plaintiff's ear by x-ray treatment, severe burns were suffered by plaintiff in areas (scalp, neck and face) remote from his ear, the treatment of such areas being neither essential nor appropriate to treatment for the removal of the wart. Here again, the deviation was gross and the resulting injuries and the causes thereof readily ascertainable by a layman. Moreover, the *Emrie* petition must be read as alleging the burn injuries could have resulted only from negligence.

In the case of *Dees v. Pace,* 118 Cal. App. 2d 284, 257 P.2d 756, the California Court of Appeals was faced with a factual situation almost identical with that confronting us here. The case involved a bladder fistula following an hysterectomy. The evidence, as in the case at bar, disclosed that the fistula could stem from a number of causes not all of which could have resulted from the surgeon's negligence. The trial court submitted the doctrine of *res ipsa loquitur* to the jury which rendered a plaintiff's verdict. The court of appeals reversed, stating *inter alia:*

"An hysterectomy operation as disclosed by the medical testimony is a complicated one and it would lie beyond the realm of the common knowledge and experience of laymen as to whether or not this result would ordinarily occur in the absence of negligence. . . ." (p. 289.)

In the case of *Siverson v. Weber,* 57 Cal. 2d 834, 22 Cal. Rptr. 337, 372 P. 2d 97, a vesicovaginal fistula following an hysterectomy was again the basis of a medical malpractice action. In *Siverson* the trial court refused to submit the case under the doctrine and the plaintiff appealed from a defendant's verdict. Again the medical testimony concerning the causes of a fistula was substantially the same as that herein and in the *Dees* case. In upholding the trial court the California Supreme Court said:

"It is obvious that neither the cause of plaintiff's fistula nor the question whether, in the light of past experience, it was probably the result of negligence by defendants is a matter of common knowledge among laymen. . . ." (p. 838.)

Because of the inability of a plaintiff in some cases to obtain expert medical witnesses to testify; the application of the doctrine has been suggested as a matter of necessity. (1 Louisell and Williams, Medical Malpractice [Res Ipsa Loquitur; Present Status], § 14.04, pp. 424, 425; *Ybarra v. Spangard,* 25 Cal. 2d 486, 154 P. 2d 687, 162 A. L. R. 1258.) In the instant case plaintiff had no difficulty

in obtaining medical doctors to testify on her behalf. Plantiff's evidence, if believed, would have supported a finding of negligence. The evidence clearly established that clamping or stitching could have caused the fistula, either of which would have constituted negligence. However, Dr. Lueken emphatically denied that he "cut", "clamped" or "stitched" plaintiff's bladder. Evidently the jury believed him and concluded the fistula was caused by an abscess—a nontraumatic injury.

In view of the alternative possible causes of the fistula established by the evidence, one of which was an abscess not stemming from negligence, it cannot be said the occurrence of the injury, in itself, established negligence on the part of the defendant. (See *Rhodes v. DeHann,* supra; and *Waddell v. Woods,* supra.)

Under the evidence herein the submission of *res ipsa loquitur* was neither needed nor appropriate. We might add that in view of the clear cut issue concerning Dr. Lueken's negligence, framed by the evidence in this case, the submission of the doctrine would in all probability have had no effect on the jury's verdict.

Plaintiff next contends the trial court erred in submitting the issue of informed consent to the jury, taking the position that the evidence showed as a matter of law that defendant had failed to obtain plaintiff's informed consent. Plaintiff further argues that the second paragraph of the instruction given was not justified by the evidence. Plaintiff's position cannot be maintained for several reasons.

In the first place the circumstances surrounding the matter, as disclosed in the record, indicate that plaintiff is foreclosed from raising the point on appeal. In instruction No. 8 the trial court instructed the jury as follows:

"A physician has the duty to make a reasonable disclosure to a patient of all pertinent facts within his knowledge that relate to his patient's illness and to the nature of any proposed treatment and its consequences that are necessary to form the basis of an informed consent by the patient to the proposed treatment. The duty of the physician to disclose such facts is limited to those disclosures which a reasonable, careful physician would make under the same or similar circumstances.

"If a complete disclosure of all facts, diagnoses, and possible alternatives would endanger the recovery of the patient because of his existing physical or mental condition, the physician may withhold such information."

The record discloses that at the the instruction conference plaintiff objected to the second paragraph of instruction No. 8 on the basis there was no evidence that a disclosure in this case would

have any effect on the physical or emotional condition of plaintiff. The trial court disagreed, declaring it recalled testimony to that effect by defendant. The record shows that at this point plaintiff's counsel conceded that if defendant had testified, as recalled by the trial court, then in that case plaintiff would have no objection to the instruction. The record reflects the trial court's recollection was correct. Dr. Lueken testified that a vesicovaginal fistula in connection with an hysterectomy is a very, very minimal risk; that he did not tell his patients about such minimal risks and further:

". . . If I scared the patient prior to surgery that she may die or have serious complications, I probably would do undue harm to her emotional makeup. It's already serious enough somebody has to go to a hospital for this length of time and find herself minus the female structures afterwards."

We take it from the record that plaintiff conceded the correctness of the informed consent instruction and that if the testimony was as recalled by the court, then the question should go to the jury; thus plaintiff cannot now raise the matter on appeal. A party should not be permitted to assume an attitude in this court inconsistent with that taken in the court below. Ordinarily, trial errors in which a party acquiesces or encourages the district court to make cannot be raised on appeal. (*Thompson v. Amis,* 208 Kan. 658, 493 P. 2d 1259, cert. den. 406 U. S. 311, 32 L. Ed. 2d 88, 92 S. Ct. 1593; *Brown v. East Side National Bank,* 196 Kan. 372, 411 P. 2d 605; and *Potwin State Bank v. Ward,* 183 Kan. 475, 327 P. 2d 1091, 80 A. L. R. 2d 166.)

Undoubtedly, plaintiff's counsel made his concession having in mind statements of this court on the subject. While we have consistently held that absent an emergency a physician must disclose the nature of and the risks involved in proposed treatment, our decisions indicate that the extent of the disclosure is not without limitation and depends upon the circumstances in each case. In this connection in *Natanson v. Kline,* 186 Kan. 393, 350 P. 2d 1093, we said:

". . . The duty of the physician to disclose, however, is limited to those disclosures which a reasonable medical practitioner would make under the same or similar circumstances. How the physician may best discharge his obligation to the patient in this difficult situation involves primarily a question of medical judgment. So long as the disclosure is sufficient to assure an informed consent, the physician's choice of plausible courses should not be called into question if it appears, all circumstances considered, that the physician was

motivated only by the patient's best therapeutic interests and he proceeded as competent medical men would have done in a similar situation." (pp. 409, 410.)

In our opinion denying a rehearing in *Natanson v. Kline*, 187 Kan. 186, 354 P. 2d 670, we said:

"Conceivably, in a given case as indicated in the opinion, no disclosures to a patient may be justified where such practice, under given facts and circumstances, is established by expert testimony to be in accordance with that of a reasonable medical practitioner under the same or similar circumstances. . . ." (p. 189.)

To the same effect, after discussing the *Natanson* case, we said in *Collins v. Meeker*, supra:

"At no time has this court ventured to say that a physician or surgeon is under obligation to disclose any and all results which might possibly follow a medical or surgical procedure. Nor would we now deny that there may well be circumstances under which it would be bad therapeutic practice to disclose the nature, the procedures and the possible harsh results of treatment. . . ." (p. 397.)

In discussing informed consent in *Younts v. St. Francis Hospital & School of Nursing*, 205 Kan. 292, 469 P. 2d 330, at pages 299 and 300, we quote with approval this pertinent statement from the opinion in *Yeates v. Harms*, 193 Kan. 320, 393 P. 2d 982:

" 'A careful examination of plaintiff's requested instruction reveals that in his concept of the case he goes too far and would have this court extend the duty of a physician or surgeon to the extreme where he would have to apprise his patient not only of the known risks but also of each infinitesimal, imaginative, or speculative element that would go into making up such risks. This is another hurdle we simply cannot make. . . .' "

Pertinent rules concerning the necessity and extent of disclosure by a physician are summarized in 61 Am. Jur. 2d, Physicians, Surgeons, Etc., § 154:

". . . In order to assure that an informed consent is obtained, the physician must make the disclosures necessary to form the basis of such a consent, but the duty of the physician is limited to those disclosures which a reasonable medical practitioner would make under the same or similar circumstances. The nature and extent of the disclosure depends upon the medical problem as well as upon the patient. It has been suggested that some disclosures may so disturb the patient that they serve as hindrances to needed treatment, and certain disclosures in some instances may even be bad medical practice." (pp. 282, 283.)

In the case at bar, the evidence discloses that Dr. Lueken, orally and with the aid of a diagram, fully explained to plaintiff the nature of an hysterectomy, and the techniques and organs involved. He did not mention the risk of a vesicovaginal fistula, but gave his

reasons for the omission. Plaintiff signed a written consent to the operation, but testified she did not read it. Under the circumstances related the question whether Lueken's disclosure was sufficient was for the jury; it was properly instructed and we find no error in this connection.

Lastly, plaintiff contends there was no substantial evidence to support the jury's verdict. The critical question developed by the evidence in this case was whether the fistula was caused by clamping or stitching of the plaintiff's bladder on the one hand or by an abscess on the other. The jury could have disbelieved Dr. Lueken's testimony and easily found that he did clamp or stitch the bladder; however, it believed his testimony and rendered its verdict accordingly. Either finding was permissible and would have been supported by evidence. The persuasiveness of his testimony was for the jury's consideration; not this court's on appeal. The question was jury work and under our venerable rules of appellate review the verdict cannot be disturbed on appeal. (*In re Estate of Bernatzki*, 204 Kan. 131, 460 P. 2d 527.) A jury, of course, may believe or disbelieve evidence and give to it varying degrees of weight. This court cannot nullify a jury's disbelief of evidence nor can it invade the jury's province of determining the persuasiveness of testimony which it may have believed. (*Vannaman v. Caldwell*, 207 Kan. 467, 485 P. 2d 1373; and *Brohan v. Nafziger*, 206 Kan. 58, 476 P. 2d 649.) Particularly when a jury verdict is involved we have said many times that upon appeal in considering the propriety of a verdict the evidence is to be viewed in a light most favorable to sustaining the verdict. (*Schroeder v. Richardson*, 196 Kan. 363, 411 P. 2d 670.)

This is basically a fact case which was fully and competently tried and in which the issues were properly submitted to and determined by the jury. There being competent evidence to support the verdict it will not be disturbed on appeal.

The judgment is affirmed.