No. 49,141

VERNETTE K. LUCAS, *Appellee,* v. E. W. J. PEARCE, M.D., and DRS. GILL, HOBSON & PEARCE, P.A., *Appellants.*

(576 P 2d 670)

Opinion filed April 1, 1978.

*John J. Alder,* of Alder & Zemites, of Overland Park, argued the cause, and *Donald L. Zemites, Leslie A. White, W. E. Winbigler, Bryan E. Nelson, Darrell D. Waird,* and *Douglas C. McKenna,* all of the same firm, were with him on the brief for the appellants.

*Thomas W. Brooks,* of Overland Park, argued the cause, and *Virginia E. Brooks,* of Overland Park, was with him on the brief for the appellee.

*Per Curiam:* This is an appeal from a jury verdict on a medical malpractice case wherein plaintiff was awarded $96,000.00 for her damages and an additional $15,000.00 on behalf of her husband. Various defendants were named in the original action but, by various means, the ranks were thinned down to Dr. E.W.J. Pearce and the professional association of which he was a member.

The plaintiff was having problems with pelvic pain. Dr. Pearce, a gynecologist, was her treating physician and she was admitted to a hospital on January 24, 1972, for treatment. She was 27 years old at the time of her admission. Dr. Pearce recommended a total abdominal hysterectomy including a bilateral salpingo-oophorectomy. This involves removal, through an abdominal incision, of her uterus, cervix, both ovaries and both Fallopian tubes. The operation was performed on January 25, 1972, and the plaintiff was discharged on February 2, 1972, with her condition being described as "good." After surgery she complained of a vaginal "sticking" sensation and dyspareunia (pain during sexual intercourse). Dr. Pearce advised these problems would go away in time. Plaintiff's husband testified that in June of 1974 his penis was lacerated during sexual relations with the plaintiff. In the summer of 1974 plaintiff was examined by another gynecologist and was scheduled for surgery. She then sought another opinion from a third gynecologist. Her condition was diagnosed as being caused by autosutures that had been used in her hysterectomy to close her vaginal cuff. Autosutures are, in essence, metal staples.

They are used in lieu of stitches and are supposed to close in a "B" shape. Some of these sutures were in plaintiff with the points sticking outward. A gynecologist attempted removal in his office but was unable to do so because of pain experienced by plaintiff. Thirteen staples were surgically removed in August, 1974. X-rays revealed there were more staples present than were removed, but they could not be located without substantial injury to tissue, which was felt not to be warranted. The remaining staples may ultimately have to be removed if they cause difficulty. This action resulted.

Numerous points of error are raised on appeal. The defendants challenge the sufficiency of the evidence in a number of areas. As in *Tatro v. Lueken,* 212 Kan. 606, 512 P.2d 529, evidence was presented that supported the contentions of the plaintiff and of the defendants. In *Tatro* the following general rules were set forth:

"Either finding was permissible and would have been supported by evidence. The persuasiveness of his testimony was for the jury's consideration; not this court's on appeal. The question was jury work and under our venerable rules of appellate review the verdict cannot be disturbed on appeal. (*In re Estate of Bernatzki,* 204 Kan. 131, 460 P.2d 527.) A jury, of course, may believe or disbelieve evidence and give to it varying degrees of weight. This court cannot nullify a jury's disbelief of evidence nor can it invade the jury's province of determining the persuasiveness of testimony which it may have believed. (*Vannaman v. Caldwell,* 207 Kan. 467, 485 P.2d 1373; and *Brohan v. Nafziger,* 206 Kan. 58, 476 P.2d 649.) Particularly when a jury verdict is involved we have said many times that upon appeal in considering the propriety of a verdict the evidence is to be viewed in a light most favorable to sustaining the verdict. (*Schroeder v. Richardson,* 196 Kan. 363, 411 P.2d 670.)" (p. 618.)

There was substantial competent evidence to establish that the use of autosutures in tissues that are elastic such as those in a vagina is beyond the standard of care in the community. There was evidence of lack of expertise in the use of the "staple gun" by Dr. Pearce. Likewise, there was sufficient evidence to establish a causal relationship between the autosutures in her body and plaintiff's dyspareunia and resulting remedial surgery.

The defendants challenge the qualifications of plaintiff's expert, Dr. Kapstrom, to testify. The trial court has discretion to determine the qualifications of an expert witness and to determine the admissibility of the testimony (*Borth v. Borth,* 221 Kan. 494, 561 P.2d 408). No abuse of discretion is shown.

The defendants claim error in permitting the testimony of

female patients who had had similar surgery performed by Dr. Pearce with autosutures prior to plaintiff's surgery and similar resulting problems. This was offered to show notice to Dr. Pearce of the complications from the use of autosutures and a limiting instruction was given. There was no error in the admission of this evidence for the limited purpose of notice.

The most serious claim of error is the failure of the trial court to instruct the jury on the contentions of the parties and to define the issues. The manufacturer of the "staple gun" and staples was a defendant at trial and a defendant's verdict was returned in its favor. The following instruction was given as to the issues between plaintiff and this defendant:

### INSTRUCTION NO. 14

"The plaintiff, Vernette K. Lucas, claims that she was injured and sustained damages as a result of conduct by the defendant, United States Surgical Corporation. Plaintiff bases her claim against defendant United States Surgical Corporation on alternative theories, to-wit:

1.  Breach of duty to test the product;
2.  Breach of duty to warn.

On each theory, plaintiff has the burden to prove the elements of the asserted theory of liability. The elements of each asserted theory of liability are explained fully in subsequent instructions. Furthermore, the plaintiff must establish that this defendant's conduct under one or more of these theories of liability was the direct cause of her injuries and damages, if any.

"The defendant, United States Surgical Corporation, denies that:

1.  Plaintiff has established the necessary elements under any of the theories of liability as hereinafter explained;
2.  That any conduct on its part was a direct cause of any injury or damages sustained by plaintiff;
3.  That the plaintiff was injured;
4.  That the plaintiff was injured or damaged to the extent claimed.

"If you find from all the evidence that the plaintiff has failed to meet the burden of proof on any of the issues concerning which the burden of proof rested upon her, then you should return a verdict in favor of the defendant.

"If, on the other hand, you find that the plaintiff has met the burden of proof on each of the issues concerning which the burden of proof rested upon her, then you should return a verdict in favor of the plaintiff versus United States Surgical Corporation."

No comparable instruction was given as to the issues between plaintiff and appellants.

The following instructions were given:

### INSTRUCTION NO. 5

"Burden of proof means burden of persuasion. A party who has the burden of proof must persuade you that his claim is more probably true than not true. In

determining whether he has met this burden, you will consider all the evidence, whether produced by the plaintiff or defendant."

### INSTRUCTION NO. 8

"Negligence is the lack of ordinary care. It is the failure of a person to do something that a reasonable, careful person would do, or the act of a person in doing something that a reasonably careful person would not do, measured by all the circumstances then existing."

### INSTRUCTION NO. 9

"In determining whether a physician used the learning, skill and conduct required of him, you are not permitted to arbitrarily set a standard of your own or determine this question from your personal knowledge. On questions of medical or scientific nature concerning the standard of care of a physician, only those qualified as experts are permitted to testify. The standard of care is established by members of the same profession in the same or similar communities under like circumstances. It follows, therefore, that the only way you may properly find that standard is through evidence presented by physicians called as expert witnesses.

"The above rule is limited to those matters clearly within the field of medical science. If what was done or not done in the treatment of a patient is within the common everyday knowledge of persons generally, such facts may be established from the general circumstances as shown by the evidence, which evidence may include testimony by persons other than experts."

### INSTRUCTION NO. 10

"In performing professional services for a patient, a physician has a duty to use that degree of learning and skill ordinarily possessed and used by members of his profession and of his school of medicine in the community in which he practices, or in similar communities, and under like circumstances. In the application of this skill and learning the physician should also use ordinary care and diligence.

"Failure to do so is a form of negligence that is called malpractice."

No objection was made during trial concerning the failure to give an instruction comparable to Instruction 14, but relating to the issues between plaintiff and defendant physicians. The missing instruction issue was raised for the first time in appellants' motion for new trial. On this issue the trial court concluded:

"The above matter was tried to a jury in this division commencing on September 15, 1975 and concluding on September 27, 1975 with a verdict in the total amount of $111,000 versus separate defendants E.W.J. Pearce, M.D., Bruce D. Gill, M.D. and Gill, Hobson & Pearce, P.A., and exonerating co-defendant United States Surgical Corporation.

"Defendant doctors filed a motion NOV or in the alternative for a new trial, motion NOV and judgment, and motion for judgment and new trial. The Court has, with the benefit of its trial notes, with the benefit of trial transcript, and on hearing statement and arguments of counsel, reviewing the authorities supplied and additional research, found all motions of separate defendant E.W.J. Pearce, M.D. and Gill, Hobson & Pearce, P.A. be and they are hereby overruled effective this date. The judgment versus Dr. Gill is, by the Court, hereby set aside and held for naught effective this date.

"I am enclosing some observations extracted from my notes, along with memorandum decision relative to the position taken by the Court and the Court does acknowledge that a decision in this matter was somewhat difficult. Sum and substance of my reasoning, however, relates to the fact that in the two weeks of testimony, all sides had an opportunity to present their positions; there was an accumulation of factors involved that dictated that the matter be submitted to a jury for determination. I have reviewed both Kansas case law and case law from other jurisdictions and do not feel that it was reversible error to submit this matter in its entirety to a jury. I was concerned with my omission of an 'issue' instruction. It technically was not requested, but the Court will not hide behind the skirts of that premise, but feels to the contrary that after hearing counsel, evidence, arguments, the jury was well aware that plaintiff Lucas was contending that the conduct of the doctors on the accumulative evidence was medical malpractice and was further well aware that the doctors were denying same. While the instruction was not given, under the circumstances, the Court feels it is not reversible error."

Attention is directed to K.S.A. 60-251 pertaining to jury instructions as follows:

"(a) *When made.* At the close of the evidence or at such earlier time during the trial as the judge reasonably directs, any party may file written requests that the court instruct the jury on the law as set forth in the requests. The judge shall instruct the jury at the close of the evidence before argument and the judge may, in his or her discretion, after the opening statements, instruct the jury on such matters as in the judge's opinion will assist the jury in considering the evidence as it is presented.

"(b) *When waived.* No party may assign as error the giving or failure to give an instruction unless he or she objects thereto before the jury retires to consider its verdict stating distinctly the matter to which he or she objects and the grounds of his or her objection unless the instruction is clearly erroneous. Opportunity shall be given to make the objections out of the hearing of the jury."

See also K.S.A. 60-2105 as follows:

"The appellate court shall disregard all mere technical errors and irregularities which do not affirmatively appear to have prejudicially affected the substantial rights of the party complaining, where it appears upon the whole record that substantial justice has been done by the judgment or order of the trial court; and in any case pending before it, the court shall render such final judgment as it deems that justice requires, or direct such judgment to be rendered by the court from which the appeal was taken, without regard to technical errors and irregularities in the proceedings of the trial court."

Clearly, the failure to give the issues instruction was error. In carefully reviewing the record, however, we find that substantial justice was done under the totality of the circumstances herein and that the error was not reversible or prejudicial error.

Various other points of error are raised. We have examined each of these contentions and find no error. The request for reassessment of costs is considered and denied.

The judgment is affirmed.